ELIHU GRANGER plaintiff in error, v. HENRY WARRINGTON, defendant in error.

*Error to Du Page.*

A party, who has obtained a change of venue, taken several steps in the cause, consented to a continuance, and at a subsequent term, submitted the cause for trial without objection, cannot obtain an order of dismissal, for the reason that the original papers in the cause had not been transmitted by the clerk from the county where the suit was commenced. Application for a rule upon the clerk of the Court to send the original papers should be made at the first term after obtaining a change of venue.

A party, who has neglected to join in demurrer, cannot complain that the cause was submitted for trial on other issues properly formed, without any disposition being made of such demurrer.

In an action on the case for malicious prosecution, the record of the suit alleged to be malicious was offered to be read in evidence. Objection was made that it contained improper matter to go before the jury, but the objection was overruled, and the record was introduced: *Held,* that if a transcript contains any matter not pertinent to the issue on trial, the proper course is to apply to the Court for an instruction to the jury to disregard it.

To exclude evidence from the jury, because of irrelevancy, the irrelevancy must be clear.

To entitle communications between individuals to be considered as confidential and privileged, the relation of client and attorney must exist. The party must consult the attorney in a matter in which his private interest is concerned, and make his statements to him with the view to enable the attorney correctly to understand his cause, so that he may manage it with greater skill; or if legal advice only is wanted, to enable the attorney the better to counsel him as to his legal rights.

Grand jurors are competent witnesses to prove facts which came to their knowledge while acting in such capacity.

The law is well settled, that parol evidence may be given of the contents of a lost writing after the fact of the loss has been satisfactorily established.

A refusal to grant a motion for a new trial for want of evidence cannot be assigned as error, when the whole evidence is not stated to be contained in the bill of exceptions.

CASE for a malicious prosecution, originally commenced by the defendant in error against the plaintiff in error in the Cook Circuit Court, but removed by change of venue to the Du Page Circuit Court, and heard before the Hon. Richard M. Young and a jury at the May term 1846, when a verdict

was rendered for the plaintiff for the sum of $500. A motion for a new trial was made and overruled, to which the defendant excepted.

The various proceedings in the cause are stated by the Court.

*I. N. Arnold,* for the plaintiff in error, contended

1. That the cause was not properly in the Du Page Circuit Court. *Wight* v. *Kirkpatrick,* 4 Scam. 340.

2. That the cause was not properly before the jury, there being an issue of law pending and undetermined. *Nye* v. *Wright,* 2 Scam. 222; *Weatherford* v. *Wilson,* Ib. 256; *McKinney* v. *May,* 1 do. 534; *Bradshaw* v. *McKinney,* 4 do. 54.

3. That the transcript of the proceedings in the trespass case should have been excluded, as it contained the affidavit of Warrington. *Anthoine* v. *Coit,* 2 Hall's Sup. Ct. R. 40.

4. The testimony in regard to Moffett's pecuniary circumstances was irrelevant and incompetent.

5. Evidence of the conversation between Granger and Curtiss, the prosecuting attorney, was improper, it being privileged and confidential. 1 Greenl. Ev. §§ 237, 240, 252, and notes; 2 Phil. Ev. 282; *McLellan* v. *Richardson,* 13 Maine, (1 Shepley,) 82.

6. Gray, the grand juror, was an incompetent witness.

7. The parol evidence of the bill of sale of the horse was improperly admitted.

8. A new trial should have been granted.

*E. W. Tracy,* for the defendant in error.

It was too late for the party to raise the objection in regard to the transmission of the original papers, after having pleaded in the Du Page Circuit Court. Rev. Stat. 529, § 9. Further, they are referred to in the bill of exceptions and assignment of errors as the *original* papers. *Consensus tollit errorem.* In the case of *Wight* v. *Kirkpatrick,* no

steps had been taken in the progress of the cause, but the objection was taken in the first instance.

There was no joinder in demurrer. In the case referred to in 2 Scam. 222, there was a joinder in demurrer, a plea and issue to the jury. *Greenleaf's Lessee* v. *Burt*, 5 Peters, 131.

The record of the trespass case was properly admitted in evidence. The affidavit was proper to go to the jury as a part of the record. If liable to objection, the party should have asked the Court to instruct the jury that it was not evidence. The plaintiff in error has cited a case in 2 Hall's Sup. Ct. R. The affidavit came in incidentally, and was not material as evidence. See 2 Saund. on Pl. and Ev. title, *"Malicious arrest,"* &c; 3 Stephens' Nisi Prius, 2266, same title.

It is objected that the testimony in relation to Moffett's circumstances was improperly received. The testimony was proper, as showing the security frivolous, and tended to show malice, rather than a desire to secure a just debt. There are two kinds of malice, legal and express. The former is made out by proof of want of probable cause.

As to the defect, if any, in making up the verdict, &c. That was a mere matter of form, and cured by the Statute of Amendments and Jeofails. *Ross* v. *Reddick*, 1 Scam. 74; *Lincoln* v. *Cook*, 2 do. 61.

The objection to the testimony of the grand juror, Gray, is without foundation. Grand jurors may testify as to extrinsic facts, though public policy dictates, as a general rule, that their proceedings should be kept secret. 2 Wheat. Selw. 1091; 1 Greenl. Ev. 300, note; *Freeman* v. *Arkill*, 2 Barn. & Cres. 494; 3 Stephens' N. P. 2286; *Lowe's* case, 4 Greenl. 439; *Rogers* v. *Hall*, 3 Scam. 45; 3 Johns. 234; 4 C. & P. 444.

The assignments of error are too vague and general. *Rowan* v. *Dosh*, 4 Scam. 461; *Rogers* v. *Hall*, 3 do. 45; *McKee* v. *Ingalls*, 4 do. 30; *Camden* v. *Doremus*, 3 How. (U. S.) R. 530; *Campbell* v. *Stokes*, 2 Wend. 137; *Henry* v. *Cuyler*, 17 Johns. 469; 2 Cowen, 31.

The Opinion of the Court was delivered by

LOCKWOOD, J.* This was an action on the case for malicious arrest, imprisonment and prosecution, commenced by Henry Warrington against Elihu Granger in the Cook Circuit Court. The declaration contains four counts, but are all based on the same facts. They state in substance that Granger not having any reasonable or probable cause of action, maliciously caused Warrington to be arrested on a *capias ad respondendem*, in an action of trespass; which *capias* was, by the procurement of Granger indorsed for bail for $60. That Warrington was arrested on said *capias* and imprisoned for thirty days, and until Warrington procured one James Moffett to become his special bail. That said suit was maliciously prosecuted in said Court, and finally tried by a jury, and a verdict of not guilty, was given in favor of Warrington, and judgment rendered thereon.

At the May term 1845, of the Cook Circuit Court, Granger filed three pleas; to wit: 1st, not guilty; 2nd, *Nul tiel record*; and 3rd, that Granger had reasonable and probable cause of action against Warrington. At the same term, the venue was changed to Du Page, on the affidavit and motion of Granger.

At the June special term in 1845, of the Circuit Court of Du Page county, the cause, by consent of both parties, was continued to the next term.

At the September term of the Du Page Circuit Court, the plaintiff below entered a *similiter* to the defendant's first plea, and demurred to the second and third pleas; which demurrer was confessed and leave granted to amend the same, and the amendment being made, the plaintiff filed his demurrer to the second plea, in which the defendant joined, and the Court sustained the demurrer. The plaintiff also again demurred to defendant's third plea, to which there was no joinder. At that term a jury was impaneled and sworn to try the cause, and by consent a juror was withdrawn and the cause continued.

---

*CATON, J. did not sit in this case.

At the May term 1846, the defendant moved the Court to dismiss the suit because the original papers did not appear on file, which motion was overruled, and thereupon a jury was sworn to try the cause, who found a verdict for plaintiff below for $500. A motion was made for a new trial, which was overruled, and defendant below excepted. It appears from a bill of exceptions taken on the trial, that plaintiff offered the record of a former suit, in which Granger was plaintiff and Warrington defendant, to show that Granger had commenced an action of trespass against Warrington, in which he had been held to bail, and that said suit had resulted in a verdict and judgment for Warrington. To the reception of this record, Granger objected, on the gronnd that it contained facts which cannot be proved by such evidence. The Court overruled the objection and permitted the record to be read in evidence.

It appears from an examination of the record thus given in evidence, that it contained an affidavit of Warrington, which he had made of the loss of a bill of sale of a horse, (the taking of which horse from Granger, was the subject of controversy in the suit) in order to lay the foundation for giving parol evidence of the contents of the bill of sale. Granger then read his own and the affidavit of one Carlisle Mason to the Court, of the loss of a bill of sale of a horse, given by Granger to Warrington and Mason, and then offered to prove by a witness the contents of said bill of sale, to which Granger objected, but the objection was overruled, and the witness was permitted to testify and give parol evidence of its contents. Warrington then called a witness and asked him what were the circumstances of James Moffett as to property, in March, 1843; to which question defendant below objected and the Court overruled the objection, and the witness answered that all the property he ever knew of Moffett's having in his possession, was a wagon and pair of horses, which he parted with in March, 1843. The plaintiff below then called James Curtiss, who testified that he was prosecuting attorney of Cook county in the year 1843. That in the spring or fall of that year and after the commencement of the trespass suit of Granger against Warrington, Granger came to

him and stated that Warrington had taken his, (Granger's,) horse, out of his, (Granger's,) stable, and that he, (Granger,) contemplated making a complaint against him before the grand jury about it. That Granger counselled with witness as State's attorney, and related to witness various circumstances, and witness thereupon told him that witness did not think that an indictment could be sustained. Witness also stated that notwithstanding this advice, that Granger made a complaint before the grand jury, who refused to find a bill. To the reception of this testimony Granger objected, but the objection was overruled and Granger excepted.

Plaintiff below then called John Gray who testified that he was one of the grand jurors of Cook county in the spring or fall of 1843, and that Granger made a complaint against Warrington, and that no bill was found. This testimony was objected to as inadmissable, but the objection overruled and Granger excepted. Numerous errors have been assigned, but the following only were relied on:

1st. The original papers in the cause were never transferred from Cook county to Du Page, and consequently, the cause should have been dismissed.

2nd. There was a trial by jury, while no decision had been made on the demurrer to defendant's third plea. There never was an issue on that plea except by demurrer. If demurrer decided, then a plea amended and unanswered.

3rd. The transcript of the proceedings in the trespass case should have been excluded. It contained matters improper to go to the jury. The affidavit of Henry Warrington was improperly read in evidence.

4th. The testimony in regard to Moffett's pecuniary circumstances was irrelevant and incompetent.

5th. The conversation between Granger and Curtiss, the prosecuting attorney, was a privileged, confidential conversation, and should not have been admitted.

6th. The evidence of Gray, the grand juror, was incompetent.

7th. The parol evidence of contract of sale was improperly received.

8th. The Court erred in not granting a new trial.

The assignment of errors will be considered in their order.

The first assignment questions the correctness of the decision below, in refusing to dismiss the cause in Du Page, for the reason that the original papers had not been transmitted by the clerk of the Cook Circuit Court to the Du Page Court. The statute relative to a change of venue requires that the clerk shall transmit all papers filed in the cause and appertaining or forming part of the record. But can a party who has obtained a change of venue, taken several steps in the cause, consented to a continuance, and at a subsequent term went to trial without objection, make this motion? We think not. The declaration and other pleadings and proceedings in the cause must have been before the Du Page Court in some form, as all the proceedings of the Cook Court have been sent up in the record. If only copies were transmitted by the clerk of Cook to Du Page, it only amounted to an irregularity, which was waived by the defendant below appearing in Du Page and consenting to a continuance, and subsequently to a trial without objection. Doubtless at the first term of the Du Page Court, if the defendant had objected to proceeding in the cause, without the original papers, it would have been the duty of the Court on the application of either party, to have given a rule upon the clerk of the Cook Court to send the original papers, and if the Court had refused the rule, it would have been error. The facts in the case of *Wight* v. *Kirkpatrick*, 4 Scam. 340, where this Court held, that the dismissal of the case because the papers were not properly sent from Jo Daviess county to Adams, were dissimilar in several respects. In that case it does not appear at whose instance and for whose benefit the change of venue took place. Nor does it appear, although the cause was continued on the docket for several terms, that the defendant had consented to these continuances or had even appeared in Court until the term he moved to dismiss the cause. This Court also intimate in that case, that Wight, the plaintiff, did not take any "steps indicating an intention to proceed in the trial of the cause." The decision

of the case at bar, does not therefore conflict with the case of *Wight* v. *Kirkpatrick.*

The second error is entirely technical. It appears from the record that plaintiff below demurred to the defendant's third amended plea, but to which the defendant did not join. It is now contended that this is error. If the defendant had joined in demurrer, so as to have formed an issue in law, perhaps this would have been fatal. The defendant, however, by neglecting to join in demurrer, has not placed himself in a position to make any objection. He was in default in not presenting an issue, which the Court could decide. To suffer trivial defects in making up the pleadings, to be assigned for error in an appellate Court, and thus recover judgments which have been fairly tried and decided, does not comport with the ends of justice. What good object can be answered by reversing this judgment, and sending this case back for the Court below to decide on a plea which this Court sees must be held to be bad. The third plea only amounted to the general issue, and that plea being filed, the defendant under it, could give every thing in evidence that he could if issue had been joined on the third plea. The cases of *Phillips* v. *Dana*, 1 Scam. 498, and *Waters* v. *Simpson*, 2 Gilman, 570, sustain the positions here advanced.

3d. The transcript of the record in the trespass suit was correctly received in evidence. Before the plaintiff below could produce any evidence of malice, it was incumbent on him to prove by legal evidence, the institution of the trespass suit, his arrest in that suit, and the subsequent termination of the cause. This proof could only be made by the production of the record or a transcript. If this transcript had been rejected, the foundation of the plaintiff's action would have been gone, and he would have been under the necessity of submitting to a non-suit.

If the transcript contained any matter not pertinent to the issue on trial, the proper course would have been to have applied to the Court below to have prevented the reading in evidence of the improper matter, or to instruct the jury to disregard it.

The fourth assignment of errors, questions the relevancy of the testimony in relation to Moffett's pecuniary circumstances. What use the plaintiffs below intended to make of this testimony, cannot readily be perceived. Malice, as well as want of probable cause, being the gist of the action, can in general only be made out by circumstances, and considerable latitude should be allowed in showing collateral circumstances that may be remotely connected with the transaction. In this case, however, the bill of exceptions does not profess to include all the testimony that was given on the trial. It is then possible, if not probable, that by other testimony not contained in the bill of exceptions, some pertinency may have been given to this testimony. As was suggested on the argument, it may have been proved, that Granger consented that Moffett should be received as Warrington's special bail, notwithstanding Granger knew that Moffett was worth nothing. Such a circumstance, if proved, might have weighed with the jury in establishing malice. To exclude evidence from the jury because of irrelevancy, the irrelevancy must be clear. The law on this subject is well laid down in the Court of Appeals in Kentucky, reported in 1 A. K. Marsh. 3. That Court say: "There is no question, that in strict propriety, the parties should confine their evidence to the matters in issue, and that proof wholly foreign to such matters is inadmissible; but to sustain an objection merely on the ground that it is irrelevant, it ought to appear to be so beyond all doubt, for it is a settled rule in all cases where the competency of evidence is doubtful, to admit it to go to the jury, leaving them to determine as to the weight to which it shall be entitled, and this rule ought to apply with peculiar force to a case like the present, where the objection to the evidence is founded solely on its relevancy." As, then, this Court cannot determine with certainty, that this testimony was irrelevant, we think the judgment below ought not to be reversed on account of its reception.

The question raised by the fifth assignment of error is one of great importance in the administration of justice. The

rule of law applicable to confidential communications be-
tween client and attorney received a thorough investigation
by the Supreme Court of Massachusetts, in the case of *Hat-
ton* v. *Robinson*, 14 Pickering, 420; and we think both the
rule and its limitation were correctly laid down in that case.
Chief Justice Shaw, in delivering the Opinion of the Court,
says: "The rule upon which the plaintiff's counsel in the
present case relied, to exclude all that part of the testimony
of Mr. Ames, which consisted of statements made to him
by Winch, as to his views and motives in making the sale,
upon which the plaintiff founds his title, is that well known
rule of evidence, founded on the confidence which a client
reposes in counsel, attorney or solicitor. By this rule, it is
well established, that all confidential communications be-
tween attorney and client are not to be revealed at any
period of time, nor in any action or proceeding between
other persons, nor after relation of attorney and client has
ceased. The privilege is that of the client, and never ceases
unless voluntarily waived by the client." "But the privi-
lege of exemption from testifying to facts actually known to
the witness, is in contravention to the general rules of law;
it is, therefore, to be watched with some strictness, and is
not to be extended beyond the limits of that principle of
policy upon which it is allowed. It is extended to no other
person than an advocate or legal adviser, and those persons
whose intervention is strictly necessary to enable the client
and attorney to communicate with each other, as an inter-
preter, agent, or attorney's clerk. And this privilege is
confined to counsel, solicitors and attorneys, when applied
to as such and when acting in that capacity." *Wilson* v.
*Rastell*, 4 T. R. 753.

The same Judge, in the course of the same Opinion, further
says, in illustrating the doctrine, that "where the matter is
communicated by the client to his attorney for purposes in
no way connected with the object of the retainer and em-
ployment of the attorney as such, then the communication is
not privileged." The Court also say: "The difference is,

whether the communications were made by the client to the attorney in confidence, as instructions for conducting his cause, or a mere *gratis dictum.*"

It is apparent from the principles laid down in the case of *Hatton* v. *Robinson,* that to entitle communications between individuals to be considered as confidential and privileged, the relation of client and attorney must exist. The party must consult the attorney in a matter in which his private interest is concerned, and make his statements to him with a view to enable the attorney correctly to understand his cause, so that he may manage it with greater skill; or if legal advice only is wanted, to enable the attorney the better to counsel him as to his legal rights.

Did, then, Granger employ Curtiss as an attorney, either to investigate a question of law, in which his private interests were concerned, or to commence or defend a suit in which he was a party? He clearly had no such object. He had no personal interest in the result at which Curtiss should arrive, and he did not expect to compensate him for his advice. Consequently the relation of client and attorney did not arise; and consequently the conversation was not privileged from being disclosed by Curtiss as a witness. Granger can be considered in no other light than a witness on the part of the people, communicating to the law officer of the Government, his knowledge in relation to the commission of a supposed crime, and inquiring of that officer whether the facts thus communicated amounted to an offence. We think that no considerations of public policy require, that the conversations between Granger and the State's attorney should be regarded as confidential and privileged. It would be an unnecessary extension of the rule in relation to confidential communications, and ought not, therefore, to be allowed. The evidence of Curtiss was, consequently, properly received.

Several authorities have been adduced in support of the sixth assignment of errors. In England, and in several of the States, grand jurors are sworn to observe secrecy as to all matters that appertain to their duty as grand jurors, and

there would be a manifest impropriety, when the juror has taken this oath, to compel or permit a juror thus situated to be a witness as to any matter that was given in evidence before him in that capacity. In this State, however, no such oath is prescribed by law, and there seems to be no good reason why the members of a grand jury should not be called on to testify. In many cases that may readily be supposed, the members of the grand jury would be the only witnesses to prove facts that are necessary to be established, and without whose testimony there might be a failure of justice. In actions for maliciously procuring a party to be indicted, unless the members of the grand jury can be used as witnesses, the fact that the defendant was the prosecutor before the grand jury could not, in general, be proved. Unless the defendant had confessed that he was the prosecutor, the members of the grand jury are the only persons that can know the fact. Again, suppose, on the trial of a person for a crime, a witness should swear diametrically opposite to what he had testified before the grand jury, ought not the party to be permitted to call on members of the grand jury to prove this discrepancy, and thus show the witness to be unworthy of belief? The reason, however, for not receiving the testimony of grand jurors in England and several of the States, not existing under our laws, we are clearly of opinion that the grand juror was a competent witness.

In relation to the seventh assignment of errors, we perceive no good objection to the parol evidence of the contract of sale of the horse. The law is well settled, that parol evidence may be given of the contents of a lost writing, after the fact of the loss has been satisfactorily established. The affidavits of the loss were sufficient for that purpose.

As the whole of the evidence is not stated to be contained in the bill of exceptions, this Court has not the means of determining whether the Court below should have granted a new trial. The refusal to grant a new trial cannot consequently be assigned for error. We are, therefore, of opinion that the judgment below must be affirmed, with costs.

*Judgment affirmed.*