GRACE MICHAEL, *Appellee*, v. O. E. MATSON, *Appellant.*
No. 16,213.

SYLLABUS BY THE COURT.

1. MALICIOUS PROSECUTION—*Probable Cause a Question of Law —Erroneous Instruction.* In an action for malicious prosecution the question of what information is sufficient to warrant a reasonably prudent man in believing another guilty of a crime is one of law, and it is substantial error to submit it to the jury. An instruction that in order for probable cause for an arrest to exist the facts must be such as would justify an ordinarily prudent person in entertaining a belief in another's guilt, and that whether such facts had come to the knowledge of the defendant at the time he caused the arrest of the plaintiff is a question for the jury to determine, is likely to be understood by the jury to mean that they are to decide not only what information the defendant had but whether it was enough to justify a reasonable belief in the plaintiff's guilt. Such an instruction, unless accompanied by a clear and accurate statement of what specific facts under the circumstances of the particular case would, if found to exist, be sufficient under the law for that purpose, is materially erroneous.

2. ———— *Probable Cause.* What constitutes probable cause for an arrest is a question of law, and if a complaining witness believed upon reasonable grounds that the accused was guilty it is not material, in an action against him for malicious prosecution, whether he believed that probable cause existed in a legal sense, unless as bearing upon the question of malice.

3. ———— *Same.* It is not necessary in order for probable cause for an arrest to exist that the accuser shall believe that he has sufficient evidence to procure a conviction of the accused.

4. EVIDENCE—*Communications to a Public Prosecutor—Privilege.*
Communications made by a complaining witness to the prose-
cuting attorney concerning his knowledge of matters relating
to the probable guilt or innocence of the defendant are priv-
ileged, and can not be given in evidence over his objection in
an action against him for malicious prosecution.

Appeal from Harvey district court; PETER J. GALLE,
judge. Opinion filed December 11, 1909. Reversed.

*Frank L. Martin,* for the appellant.

*S. D. Amidon, D. M. Dale,* and *Jean Madalene,* for
the appellee.

The opinion of the court was delivered by

MASON, J.: O. E. Matson, while mayor of Burrton,
verified a complaint charging M. M. Michael and Grace
Michael, his wife, with violating the prohibitory law,
and caused their arrest. The county attorney refused
to prosecute and the case was dismissed. Grace Mi-
chael brought action against Matson for malicious
prosecution and recovered a judgment for $600, from
which he appeals.

We think the verdict must be set aside for the reason
that the instructions were so worded as naturally to
lead the jury to understand that they were the judges
of what constituted probable cause, and their findings
show that they probably acted upon that understanding.
There is some conflict on the subject, but the great
preponderance of authority favors the view that the
question of what facts are sufficient to constitute prob-
able cause is one of unmixed law. (26 Cyc. 107; 19
A. & E. Encycl. of L. 669.) Courts which acquiesce in
the general statement of the rule sometimes refuse an
unqualified application of it. For illustration, it was
approved in *Fagnan v. Knox,* 66 N. Y. 525, *Erb v. Ger-
man American Ins. Co.,* 112 Iowa, 357, and *Hamilton
v. Smith,* 39 Mich. 222, 227, but denied application in
*Heyne v. Blair,* 62 N. Y. 19, *Donnelly v. Burkett,* 75

Iowa, 613, and *Davis v. McMillan,* 142 Mich. 391. This court, however, has consistently adhered to it and given it practical effect. (*Drumm v. Cessnum,* 58 Kan. 331; *Railway Co. v. Allen,* 70 Kan. 743.) In the Drumm-Cessnum case it was said:

"Where the facts are disputed, it must be left to the jury to determine what the facts are, but the court should instruct what facts amount to probable cause for an arrest and what do not. The court should summarize the claims of the parties, and state to the jury what basis of fact must exist to show probable cause, and what will sustain the claim of a want of probable cause." (Page 333.)

In the present case the court gave this instruction:

"You are instructed that to constitute probable cause for criminal prosecution there must be such reasonable grounds of suspicion, supported by circumstances sufficiently strong in themselves, to warrant an ordinarily cautious man in the belief that the person arrested is guilty of the offense charged, and in this connection you are further instructed that a mere belief that an innocent person is guilty of a crime is not alone sufficient to justify causing his or her arrest. The facts must be such as would justify an ordinary, intelligent and reasonably prudent person in entertaining such belief. Whether in this case such facts had come to the knowledge of the defendant at the time he entered the complaint against the plaintiff is a question of fact for the jury to determine, from a preponderance of the evidence."

This definition of what constitutes probable cause is doubtless sufficiently accurate, although the use of "cautious" in place of "prudent" has been criticised. (*McClafferty v. Philp, Appellant,* 151 Pa. St. 86.) As it is not the province of the jury to determine what circumstances would induce a reasonably prudent man to believe another guilty of a crime, there seems to be no purpose in the giving of an abstract instruction on the subject.

"Inasmuch as the question of probable cause is always to be determined by the court from the facts in

Michael v. Matson.

each particular case, it would seem unnecessary to give to the jury any definition of the term, or any instruction upon abstract propositions relating to this subject. These abstract rules will guide the court in determining the question, but are apt to lead the jury away from their function of passing upon the effect of the evidence in support of the probative facts which the court may direct them to find in order to determine in which way their general verdict shall be rendered." (*Ball v. Rawles,* 93 Cal. 222, 233.)

Nevertheless such an instruction is ordinarily not prejudicial, where the charge includes a statement of what facts would amount to probable cause in the case on trial. (*Jonasen v. Kennedy,* 39 Neb. 313, 319, 320.) The difficulty here is that the last sentence of the instruction quoted, although open to a different construction, naturally tended to lead the jury to understand that they were to decide for themselves whether the facts known to the defendant when he caused the plaintiff's arrest were such as would justify an ordinarily prudent person in believing her guilty. This misleading tendency, if not corrected by a clear and accurate statement of what concrete facts would justify a reasonable belief of guilt, is a ground for reversal, unless it can be said from the record that the jury were not in fact misled. The inference from the findings, however, is to the contrary. Two of the special questions and answers read as follow:

"Ques. At the time defendant filed complaint did he believe that plaintiff's and her husband's house was a place where persons were permitted to resort for the purpose of drinking intoxicating liquors as a beverage? Ans. Yes; to some extent.

"Q. At the time the defendant filed complaint, had he been informed and did he honestly believe that the house of the plaintiff and her husband was a place where persons were permitted to resort for the purpose of drinking intoxicating liquors? A. No. He had some information but not enough to base an honest belief on."

These findings are either in conflict or they mean

that Matson did believe Mrs. Michael guilty but had formed that opinion upon insufficient information. The natural conclusion is that the jury were guided by their own judgment as to what information would be enough to serve as the basis for such an opinion. It is true the court elsewhere enumerated the grounds relied upon by the defendant as justifying the arrest, and instructed the jury that, if the facts were as he claimed, they constituted probable cause and he was entitled to a verdict; but the qualifying words were added: "unless you should further find that the defendant, himself, after consulting with an attorney, believed there was no probable cause for the prosecution." The addition limited the effect of the rest of this instruction and thus prevented a correction of the misleading tendency of the other. It necessarily introduced a new, irrelevant and confusing element into the problem—the defendant's understanding as to what constitutes probable cause in law. Belief that probable cause exists for the arrest of a person is obviously a different thing from a belief that he is guilty. The latter is often said to be an essential ingredient of probable cause, although many of the definitions omit it. (26 Cyc. 29; 19 A. & E. Encycl. of L. 663; 6 Words & Ph. Jud. Def. p. 5620 *et seq.;* note, 26 Am. St. Rep. 140.) The former has no materiality in this kind of an action unless as bearing upon the question of malice. A man may cause an arrest under a reasonable belief, founded on abundant evidence, that the accused person is guilty. Yet he may suppose, through ignorance of the law, that "probable cause" does not exist, and that if he fails to procure a conviction he is answerable in damages. Plainly he would not be liable under such circumstances. Probable cause would exist in fact and would afford him a perfect defense, whatever might be the result of the prosecution. The instruction given in this respect was clearly erroneous, and under all the circumstances of the case must be deemed to have been prejudicial.

Michael v. Matson.

The probability that the jury misconceived the issues to be determined by them is increased by the fact that in the next instruction they were directed to consider, as bearing upon the matter of probable cause, the question whether the defendant believed he had sufficient evidence to convict the plaintiff of the offense charged against her. The chances of conviction depend upon too many conditions to make the prosecutor's opinion of the prospects in that respect a factor in determining the existence of probable cause. An adverse public sentiment might make the conviction of a notoriously guilty person almost hopeless, and yet the institution of a prosecution might be not only justifiable, but praiseworthy, and, in the case of a public officer, obligatory. As was said in *The State, ex rel., v. Foster,* 32 Kan. 14:

"If a county attorney vigilantly and earnestly discharges his duty by frequent prosecutions in a community seemingly indifferent to the enforcement of law, his action will of necessity call the attention of the public to the disregard of law and the dangerous consequences following therefrom; his action will oftentimes awaken a community to a just realization of its duty, and arouse its members from indifference to a willing obedience to all that the law demands; his action will oftentimes result in enlightening public sentiment and in crystallizing public opinion in favor of the enforcement of all the laws." (Page 42.)

The only other question which is thought to require discussion relates to the admission of evidence. The county attorney was called as a witness by the plaintiff and was permitted to relate a conversation between Matson and himself relating to the liquor prosecution, before it was dismissed. The defendant objected to this on the ground that his statements to the county attorney under the circumstances were privileged. We think the objection should have been sustained, not on the theory that the relation of attorney and client existed, thus rendering the communication incompetent under the statute (Civ. Code, § 323; Gen. Stat. 1901, § 4771, subdiv. 4), but for the reason that the evidence

was inadmissible on grounds of public policy. The rule forbidding an attorney to disclose his client's secrets exists independent of the statute. Its basis is not the mere fact that the communication was confidentially made. (*Barnes v. Harris,* 61 Mass. 576, 578.) The reason for its existence is that "the law has considered it the wisest policy to encourage and sanction this confidence, by requiring that on such facts the mouth of the attorney shall be forever sealed." (*Hatton v. Robinson,* 31 Mass. 416, 422.) In the second edition of Jones on Evidence, section 749, it is said:

"Communications made to the district attorney or other *public prosecutor* are governed by the same rule, and, if there is any difference, the confidence reposed in the attorney in such cases is even more sacred than that reposed in others."

The interest of the public in protecting the privacy of a communication seems indeed greater when it is made to a prosecuting officer in that capacity than when it is made by a client to his attorney. Persons having knowledge regarding the comission of a crime ought to be encouraged to reveal to the prosecuting attorney fully, freely and unreservedly the source and extent of their information. The possibility that what they say under such circumstances will be used against them tends to impose a natural restraint upon their conduct and to deprive the officer of the benefit of their services. It is said that the privilege based upon this principle applies only to the identity of the informant (4 Wig. Ev. § 2374), and such appears to be the English rule. But in this country it has been treated as covering the communication itself. The full report of *The State v. Phelps,* Kirby (Conn.) 282, decided in 1787, reads:

"On a criminal prosecution it was moved—That the state's attorney might testify what the prisoner had disclosed to him, upon an application to be admitted a witness for the state; which the court refused, and said—Disclosures, under such circumstances, to the attorney, ought to be considered as confidential, and it would

tend to defeat the benefits the public may derive from them, should they be made use of to the prejudice of those from whom they come."

In *Oliver v. Pate,* 43 Ind. 132, it was held that the attorney-and-client rule applied, but for a reason thus stated:

"Public policy requires that a person in making communications to a prosecuting attorney, relative to criminals or persons suspected of being guilty of crime, should be at liberty to make a full statement to him without fear of disclosure." (Page 141.)

The case of *Vogel v. Gruaz,* 110 U. S. 311, is one of the same character, citing the Indiana case with approval, and adding:

"The free and unembarrassed administration of justice in respect to the criminal law, in which the public is concerned, is involved in a case like the present, in addition to the considerations which ordinarily apply in communications from client to counsel in matters of purely private concern. . . . But there is another view of the subject. The matter concerned the administration of penal justice, and the principle of public safety justifies and demands the rule of exclusion." (Page 316.)

In *State v. Houseworth,* 91 Iowa, 740, it was decided that a statute forbidding the disclosure of any confidential communication entrusted to an attorney in his professional capacity protected communications made to a prosecuting officer by a complaining witness. In *Gabriel v. McMullin,* 127 Iowa, 426, that decision was approved, but the court added:

"But aside from the statute, we think the rule of exclusion should be applied to all matters concerning the administration of justice, on the ground of public policy. A county attorney is àn officer whose duty it is to investigate crime and to prosecute therefor, not in the interest of the individual who may have suffered, but for the good of the state; and it is very clear to us that it is not only the privilege, but the duty, of every citizen who knows of facts tending to show the commission of a crime, to communicate such information to the public

officer whose duty it is to investigate the matter and to commence a criminal prosecution if a crime has been committed. Any other rule would hamper the administration of justice. A party having knowledge of facts tending to show that a crime has been committed will hesitate to lay such facts before the proper officer if the information thus given may be made the basis of an action for damages against him." (Page 429.)

Cases of the same tendency, but in which the immunity was claimed by the public officer, are: *State v. Brown, et al.,* 2 Marv. (Del.) 380, 397; *Worthington v. Scribner,* 109 Mass. 487; *In re Quarles and Butler, Petitioners,* 158 U. S. 532.

The cases of *Granger v. Warrington,* 8 Ill. 299, and *Cole v. Andrews,* 74 Minn. 93, are directly to the contrary, but in each case the question chiefly discussed was whether the relation of attorney and client existed, and in the latter it was held that if the privilege could otherwise have been claimed it had been lost by waiver.

In *People v. Davis,* 52 Mich. 569, it was held that on the trial of a criminal case it was proper to allow the defendant to show for the purpose of impeachment that the complaining witness had made statements to the prosecuting attorney inconsistent with his testimony. The reason given was that public policy required an acquittal unless the accused was in fact guilty. The court said:

"We are not called upon in this case to consider whether there may not be cases in which the prosecuting attorney would be excused, in the interest of the state, from disclosing what had been told to him with a view to the commencement of criminal proceedings. There would be strong reasons in many cases why the counsel of the state should be inviolably kept; and nothing we shall say in this case will be intended to lay down a rule except for the very case at bar and others standing upon the same facts." (Page 573.)

A similar rule was applied in *Marks v. Beyfus,* 25 Q. B. D. 494, where it was said:

"If upon the trial of a prisoner the judge should be

of opinion that the disclosure of the name of the informant is necessary or right in order to shew the prisoner's innocence, then one public policy is in conflict with another public policy, and that which says that an innocent man is not to be condemned when his innocence can be proved is the policy that must prevail." (Page 498.)

In *Cobb v. Simon*, 119 Wis. 597, and also in *Meysenberg v. Engelke*, 18 Mo. App. 346, a claim of privilege was denied, but under such exceptional circumstances that the decisions throw no light on the question under consideration. In one case the communication was not made by the complaining witness and in the other it was not made to the public prosecutor.

It therefore appears that while there is a conflict on the subject the weight of authority supports the view here adopted.

The judgment is reversed and a new trial ordered.