[No. 3028. Jan. 6, 1927,

Rehearing Denied April 8, 1927.]

STATE v. ARCHER et al.

[255 Pac. 396.]

### SYLLABUS BY THE COURT

1. The venue of a criminal case may be changed upon the application of the state, even over the objection of the defendant, where such public excitement and local prejudice exists as to be sufficient to prevent a fair trial.

2. Where the indictment is duplicitous and defectively charges a defendant with both the crime of principal in the second degree and accessory before the fact, a motion in arrest of judgment is not available to a defendant who has been convicted as an accessory, and who raised no such question before the verdict.

3. An instruction to the jury directing them that they must find that a defendant was absent at the time of the commission of the crime is not erroneous, where the defendant is being tried upon the indictment which defectively fails to allege his absence.

4. Where a witness has had an opportunity to speak and, where it would be natural to speak, or where it is his duty to speak, fails to make an important disclosure which he afterwards makes on the witness stand, it is a circumstance which, although susceptible of explanation, if unex-

[1] 16CJ p. 203 n. 40. [2] 16CJ p. 1259 n. 22 New. [3] 16CJ p. 973 n. 84 New. [4] 40 Cyc p. 2706 n. 52; p. 2735 n. 95. [5] 30CJ p. 196 n. 78 New. [6] 16CJ p. 852 n. 87. [7] 30CJ p. 193 n. 54. [8] 30CJ p. 220 n. 7. [9] 29CJ p. 1069 n. 13 New. [10] 17CJ p. 50 n. 48. [11] 40 Cyc. p. 2706 n. 52; p. 2709 n. 64. [12] 16CJ p. 1007 n. 80. [13] 17CJ p. 339 n. 64. [14] 16CJ p. 811 n. 79, 81. [15] 17CJ p. 371 n. 51; 30CJ p. 454 n. 67 New. [16] 40 Cyc p. 2369 n. 32. [17] 30CJ p. 93 n. 35.

plained, tends to impair his credibility, and it is error to refuse cross-examination of the witness to develop such facts. '

5. A defendant offered to show that a witness who had testified to important facts against the defendants had visited the home of the deceased and his wife, and while there was armed with a six-shooter. The offer was not tendered for the purpose of reflecting on the credibility of the witness, or to show motive for testifying as he had, so far as is disclosed by the record, but was offered to show the bald fact that he was there at the house armed. The offer was refused on the ground of immateriality, based upon the theory that it was immaterial, so far as the defendants were concerned, whether the witness was a co-conspirator to murder the deceased or not; the question being as to who killed the deceased, and whether the defendants were accessories. There was no error in the ruling.

6. Where an offer of proof is made in which incompetent matters are commingled with competent matters, so that the offer as a whole is incompetent, it is not the duty of the court to separate the competent from the incompetent matter, and the person who made the tender cannot predicate error upon the court's refusal to allow the same.

7. Defendant offered to prove that she and her husband knew of the conspiracy to murder him, and that deceased had expressed an intention to move to California, and that the defendant had agreed to go with him. The court ruled to allow the tender to the extent of allowing her to testify that she intended to remove with her husband to California. It was immaterial to show as an independent fact that the deceased had told her he wanted her to go to California to avoid trouble.

8. It was proposed to show the bald fact that some three years before the homicide a defendant was at times insane or mentally unbalanced on account of the death of her daughter. The court offered to allow testimony as to the sanity or insanity of the defendant during the time of the alleged conspiracy to murder, and indicated that the proposed witness would be allowed to state her reasons for such opinion, including the former insanity. Counsel refused to accept the privilege accorded. Under these circumstances there was no error in the ruling.

9. A defendant may by separate acts be both an accessory before the fact and principal in the second degree to the same murder.

10. An objection, not urged in the court below, will not be considered in this court.

11. A witness who on a former occasion failed to state important facts, notwithstanding he was asked if he knew

anything else about the case, may be impeached by showing that he failed to make such important disclosures on the former occasion.

12. An instruction which directed the jury to consider all of the evidence which they believed to be true is not erroneous.

13. The court instructed the jury that the law established certain rules to promote justice in the submission of facts to the jury, and that the court in its judgment had followed such rules. While this instruction is rather unusual, we can see no harmful error in the same.

14. At the close of the address to the jury by the district attorney, there was some demonstration of approval on the part of the audience. It was not extensive and involved a comparatively small number of the audience, who were at once ordered to leave the courtroom. The court carefully instructed the jury to disregard the demonstration and not to be influenced thereby. There is nothing in the circumstance to indicate that the verdict of conviction was produced by the demonstration. Under such circumstances the verdict will not be disturbed.

15. The crime of being an accessory to murder is a separate crime from murder itelf, and there was at the time of the commission of this crime and the trial no specific statutory punishment for being an accessory before the fact to murder. By section 1454, Code 1915, however, it is provided that in case of conviction of any felony, for which no punishment has been prescribed by law, the criminal may be punished by fine and imprisonment for not less than three months. The court erroneously sentenced all three defendants to death, and should have sentenced the accessories before the fact to imprisonment for not less than three months. The proper procedure in such case is to remand, with directions to resentence in accordance with the law.

## On Motion for Rehearing.

16. A witness for the prosecution may be cross-examined as to whether, in giving a statement to the district attorney concerning the facts in the case, he disclosed important facts to which he testified at the trial.

Appeal from District Court, Chavez County; Brice, Judge.

Claude B. Archer was convicted of first degree murder, and Katherine Halsey and Luther Foster

were convicted of being accessories before the fact, and they appeal. Affirmed as to defendant Archer, and reversed and remanded, with directions, as to defendants Halsey and Foster.

James N. Bujac, of Carlsbad, for appellant Archer.

Renehan & Gilbert, of Santa Fe, Hiram M. Dow, of Roswell, and Robert C. Dow, of Carlsbad, for appellant Halsey.

E. de P. Bujac, of Carlsbad, and H. C. Maynard, of Roswell, for appellant Foster.

Fred E. Wilson, Atty. Gen., (C. J. Roberts, of counsel), for the State.

OPINION OF THE COURT

PARKER, C. J. It appears that the venue was changed from Eddy county, where the crime was committed, to Chavez county for trial upon the application of the state, and over the objection of defendants. Appellants all assign error.

[1] This presents a most unusual situation. Here the state moves for a change of venue, not on account of the state being unable to obtain a jury for a fair trial, so far as its interests are concerned, but on account of a supposed prejudice against the defendants, which might prevent the obtaining of a fair jury to them. They each protested against any change of venue, unless it be changed to Curry county, outside the district, and demanded a trial in Eddy county, where the crime was committed. The court, nevertheless, changed the venue to Chavez county, where the trial was had.

The question turns upon a proper understanding of our constitutional and statutory provisions. Our Constitution, § 14, of art. 2, is as follows:

'In all criminal prosecutions the accused shall have the right * * * to a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed.'

This section is clear, and gives to persons a right to a fair trial in the county in which the offense is alleged to have been committed. But it is to be observed that the constitutional guaranty is for a trial by an "impartial jury" in the county. The right has a double aspect. The trial must not only be in the county, but it must also be an impartial jury. If the latter element is not present, the constitutional guaranty no longer controls. In this connection, it is to be noted that the state owes a duty to the defendant to see that he has a fair trial under all circumstances. The situation is different from that in a civil case, where each party must protect his own interests against his adversary. But in a criminal case, the state has no desire and will not be allowed to secure an unjust conviction by means of a partial and prejudiced jury. This duty is ever present and is not to be obviated or dispensed with merely because the defendant, through mistake or ignorance, fails to invoke the remedies provided by law for his protection, or even refuses to invoke the same. Another consideration presents itself to the effect that in a case where public excitement and prejudice is of sufficient magnitude and is sufficiently widespread, if the defendant has an absolute right to a trial in the county where the crime is committed, he may defy the state and the law, stand on his constitutional right, and thus defeat justice. Such a proposition would seem to be absurd and preposterous. The showing made upon the application for the change of venue, by examination of the compurgators in support thereof, disclosed public excitement and local prejudice against the defendants, but none antagonistic to the interests of the state. The showing made, however, sufficiently disclosed public excitement and local prejudice and precluded the obtaining of a fair and impartial jury, which is the constitutional guaranty. The showing fulfilled the requirement of section 5573, Code 1915. At first sight it seems strange to say that the state may change the venue of the prosecution when all the people are in its favor and all are against the defendant.

But looking a little more closely, it is seen that the state is as much handicapped by a population prejudiced in its favor as by one prejudiced against it. The state is charged with the duty of confronting the defendant with a jury of fair and impartial men. It can proceed to trial in no other way. If such a jury is not to be had in the county, then, if the position of counsel for the defendants is correct, the prosecution must fail because defendants demand a trial in the discredited county. We examined this question in State v. Holoway, 19 N. M. 528, 146 P. 1066, L. R. A. 1915F, 922. The exact grounds for the change in that case do not appear, but it is fairly inferable from the transcript, which we have examined, that the state felt that it could not obtain a fair trial in the county; there having been one attempt resulting in failure of agreement on the part of the jury. However, the principle involved is the same in that case as in this. If a fair and impartial jury cannot be obtained in the county of the offense, then the defendant is deprived of no constitutional right by a change of venue to a county free from objection; he being guaranteed a fair trial in the county of the offense if obtainable there, but not if a fair jury cannot be obtained there. See in this connection 27 R. C. L. "Venue," § 5; 16 C. J. "Criminal Law," § 303. It seems clear, therefore, that the change of venue was rightfully granted.

[2] The indictment charged murder in the first degree against the defendant Claude B. Archer in the usual form, and then alleged:

"And that Katherine Halsey, Luther Foster, and William Eugene Perdue (Perdue was acquitted and is not concerned in this appeal), then and there, unlawfully, feloniously, wickedly, premeditatedly, deliberately, with malice aforethought, and from a deliberate and premeditated design, unlawfully, feloniously, and maliciously to effect the death of said Fred Halsey, did procure, encourage, aid, abet, hire, and induce said Claude B. Archer to kill and murder the said Fred Halsey in manner and form aforesaid."

The defendant Halsey moved for a bill of particulars, and in response thereto the district attorney filed

a statement that the indictment charged the defendant
Claude B. Archer with the crime of murder, and
charged the defendants Halsey and Foster as acces-
sories before the fact, and that the state would intro-
duce evidence in support of said charges accordingly.
Upon this understanding the parties went to trial
without objection to the indictment; in fact, the de-
fendants were not then called upon to disclose their
defense. At the close of the testimony, the defendant
Halsey moved for a directed verdict in her favor upon
the ground that the indictment, made certain by the
bill of particulars, charged her with being an acces-
sory before the fact to the murder, and the disputed
evidence showed that she was present, within 20 feet
of the deceased when he was shot and killed, and,
consequently, if guilty at all, she was guilty as prin-
cipal in the second degree, and could not be convicted
as accessory under the evidence.   The   motion   was
denied.   The same proposition was again presented
by requests for instructions to the jury.   The jury
convicted her as accessory before the fact.   A motion
in arrest of judgment was interposed in which the
whole theory of the defense was reversed, and in
which it was set out that the indictment charged her
as principal in the second degree, and that she could
not be convicted as accessory before the fact.   This
situation presents two considerations:   Does the in-
dictment charge her with being an accessory at the
fact, or principal in the second degree; and, if so, has
she by her conduct estopped herself now to so claim?

[17] The indictment evidently is duplicitous and
defectively alleges both crimes.   It alleges that the
defendants "did encourage, aid, and abet" the com-
mission of the crime, omitting the allegation that they
were present, which is required by the rules of good
pleading.   But the above words imply presence.   It
would be impossible for one to encourage, aid, and
abet another to commit a crime, unless the former
was present either actually or constructively.   The
indictment further charges the said defendants that
they "did procure, hire, and induce" the commission

of the murder, omitting the allegation that said acts were done before the commission of the crime, which is required by the rules of precedent and good pleading in order to charge a person as accessory before the fact. But there is something in the nature of procuring, hiring, and inducing a man to murder another which necessarily implies and requires that it be done prior to the murder. It could not be done at the murder. The hiring necessarily requires negotiations and an understanding between the parties. The same may be said of the procuring and inducing to murder. The place where such hiring, procuring, and inducing was done is correctly alleged under the word "there." The time is alleged as "then." In a case like this, where time is not an issuable fact, "then" means at any time within the statute of limitations. 1 Bishop's New Crim. Proc. § 400.

We have then a case where a charge of being an accessory before the fact is defectively stated, but where all of the elements of the crime are implied from the allegations employed. In such a case a motion in arrest of judgment is not available. 31 C. J. "Indictment and Information," § 548; State v. Montgomery, 28 N. M. 344, 212 P. 341.

[3] The same considerations control the objections urged by the defendant Foster in regard to the court's instruction No. 12, in which the court directed the jury that they must find that he was absent at the time of the commission of the crime. The indictment is defective in failing to allege his absence, but his absence is implied by the language of the allegation. At any rate, he might be guilty as accessory before the fact, even if he were also present and guilty as principal in the second degree. 1 Bish. New Crim. Law, § 664.

[4] It appears that one Zach Teel, a witness for the prosecution, testified to several damaging facts against the defendants Foster and Halsey. On cross-examination it was shown that early on the morning

following the homicide he telephoned the sheriff that he knew something about the case. The sheriff went to see him, and the witness told the sheriff that Mrs. Halsey had endeavored to hire the witness to murder her husband. He admitted, however, that he did not at that time tell the sheriff three other damaging facts which he had related at the trial. Thereupon the district attorney, on redirect examination, apparently for the purpose of strengthening the credibility of the witness, inquired whether the witness had not mentioned in a written statement given to the district attorney the several facts testified to on the present hearing. The witness answered that he had. Objection was interposed by counsel for Mrs. Halsey on the ground that the testimony called for oral evidence as to the contents of the written instrument, and that the defendant was entitled to have the writing if the witness was to be examined upon it, so that an intelligent cross-examination could be made. Much insistence was made in behalf of both Halsey and Foster that they were entitled to the written statement. The court, at the instance of Halsey, struck out the answer. Thereupon the prosecution withdrew the question and upon its motion, the question and answer were again withdrawn from the jury. Thereupon counsel for Mrs. Halsey offered to inquire of the witness whether in his written statement to the district attorney he had attemped to tell all he knew about the facts, and whether he had mentioned the damaging facts about which he had testified at the present trial. This offer was denied by the court upon the ground that it would be immaterial to show that he had omitted to state the facts generally, or the specific damaging facts to which he had testified at the trial. In this the court was clearly in error. It is well understood that, if the witness when he has an opportunity to speak, and where it would be natural to speak, or where it was his duty to speak, fails to make an important disclosure, which he afterwards makes on the stand, it is a circumstance which, although susceptible of explanation, if unexplained,

tends to impair the credibility of the witness. See State v. Perkins, 21 N. M. 135, 153 P. 258; 2 Wigmore on Ev. (2d Ed.) § 1042; 6 ones on Ev. (2d Ed.- pp. 2721, 2722. For this error the judgment will have to be reversed as to Mrs. Halsey.

Appellant Foster is not in position to take advantage of this error, not having joined in the objection to the ruling. No questions were asked on behalf of Foster involving this proposition, upon which the court ruled erroneously.

[5] Counsel for appellant Halsey sought to show by the witness Bertha Fields, who is the daughter of appellant Halsey, and who from time to time was being visited socially by the witness Teel at the Halsey home, that Teel was armed with a six-shooter. The offer was not tendered for the purpose of reflecting on the credibility of the witness, or to show motive on his part, so far as is disclosed by the record. The offer was refused on the ground of immateriality. The court based its ruling on the theory that it was immaterial, so far as appellants were concerned, even if Teel was a co-conspirator to murder Halsey by arrangement with Foster and Mrs. Halsey; the question being as to who killed Halsey, and whether the appellants were accessories. In this ruling the court was evidently correct.

[6] Complaint is made of the refusal of the court to permit appellants to ask the witness Perdue on cross-examination the following question:

"Well, in October, 1923, didn't you shoot John K. Redmond in the town of Artesia, and wasn't John K. Redmond, after being shot in the leg by you in Artesia, taken to the Sisters' Hospital at Carlsbad on the 11th day of October, 1923, and did he not die from blood poisoning on October 21st, 1923, said blood poisoning resulting from the wound you inflicted upon him in the fight you had with that boy?"

The question by the prosecution was that the question was incompetent, which was sustained by the court. The question was clearly incompetent. The only pertinent inquiry was whether the witness shot

Redmond, and not whether he afterwards died of blood poisoning. The refusal by the court was followed by a tender of proof by way of cross-examination covering the same field as was embodied in the incompetent question. The tender contained some matters which were competent, for instance, that the witness had attempted to rob the clothing of the dead man, but the tender is so incumbered with incompetent mattrs as to justify the court in excluding it. 1 Wigmore on Evidence (2d Ed.) § 17; 9 Encyc. Evidence, p. 174; Elliott, Appellate Procedure, §§ 745, 746.

It is true that counsel did afterwards ask a proper question as to whether the witness had had a fight with Redmond, but, in explaining the object of the question, it is disclosed that it was asked for the purpose of obtaining an admission contradictory of the previous account of the affair by the witness. The question clearly failed to call for the desired admission.

[7] Counsel for appellant Halsey complains of the denial of the tender of proof by her to the effect that she and her husband knew of the conspiracy to murder him, and discussed the same, and that deceased had expressed an intention to sell out and move to California, and that the defendant had agreed to go with him. The relevancy of the offer, it is said, appears from the fact that she had discussed the danger with her husband, and that she had agreed to go with him to California to avoid the danger, all tending to show, circumstantially, that she probably was not a participant in the murder. The trouble with the present objection of counsel, however, is that the court ruled to allow the tender to the extent of allowing Mrs. Halsey to testify that she intended to remove with her husband to California, and to state why she so intended. It was immaterial to show as an independent fact that the deceased had told her he wanted to go to California to avoid trouble.

[8] Counsel complain of the exclusion of the tender of testimony on the subject of the insanity of Mrs. Halsey. We are satisfied the tender was properly refused. It was proposed to show the bald fact that some three years before the homicide, Mrs. Halsey was at times insane, or mentally unbalanced, on account of the death of her daughter. The court in denying the tender offered to allow testimony, both by expert and lay witnesses, that Mrs. Halsey was insane during the time of the alleged conspiracy to murder, and indicated that the proposed witness would be allowed to state her reasons for such opinion, including the former insanity. Counsel, however, refused to accept the privilege accorded. No offer to show insanity at the time of the commission of the crime was made. Thus counsel failed to place the court in error.

[9] Counsel urges that Mrs. Halsey, having been present at the killing, could not be an accesory before the fact. We have heretofore seen that this is an erroneous view.

[10] Counsel for Archer and Foster complain of the introduction of the testimony of Roten and Shattuck as to a cut or scratch on Archer's hand when he was arrested. The objection here urged to the effect that these witnesses were allowed to testify without being qualified as experts that the scratch could have been made by a barbed wire in the fence was not presented in the court below. There the objection in the case of Roten was that the question called for the conclusion of the witness, and in the case of Shattuck that the question was leading and called for the conclusion of the witness. It seems clear that the proposition presented here was not raised in the court below, and is not now available.

[11] A witness, Arthur Staten, testified that he had gone to the Perdue restaurant at 11 o'clock p. m. to look for some keys which he had lost, and, knocking on the door, aroused Archer, who rose from bed and

admitted him, all for the purpose of establishing an alibi for Archer. The prosecution introduced the stenographer who took the testimony of this witness before the grand jury, and showed that he gave no such testimony there. The stenographer further testified on cross-examination that no such questions were asked the witness before the grand jury. It appears, however, that upon cross-examination the witness Staten had been interrogated as to whether he had not been asked before the grand jury, "Do you know anything else about this case?" To which he answered, "That is all I know." He replied that he did not remember just how it was. This situation authorized the examination which was had. He had an opportunity and it was his duty, to tell the grand jury in answer to the above question all about the keys and finding Archer in bed, but he chose not to do so.

[12] Complaint is made of instruction No. 4, which directed the jury to consider all of the evidence which was believed to be true in arriving at the guilt or innocence of the defendants. The claim is made that this was erroneous on the ground that the jury should have considered all the evidence, true or false, in arriving at their verdict. This contention is frivolous, and needs no other comment.

[13] Complaint is made of instruction No. 26, in which the court stated that the law established certain rules to promote justice in the submission of facts to the jury, and that the court, in his judgment, had followed such rules. The only occasion for such an instruction, if any there could be, was the fact that there had been much controversy at the trial as to the order of proof. Counsel cite no authority, nor make any argument to convince us that harmful error was committed.

[14] All of the defendants complain of the demonstration made by the bystanders at the close of the address of the district attorney for the prosecution.

There were some demonstrations of approval when the district attorney closed his argument. It was not extensive and involved a comparatively small number of the audience, who were at once ordered to leave the courtroom. The court carefully instructed the jury to disregard the demonstration and not to be influenced thereby. There is nothing in the circumstances to indicate that the verdict of conviction was produced by the demonstration. Under such circumstances the verdict will not be disturbed. State v. Blancett, 24 N. M. 433, 174 P. 207.

[15] The court sentenced all three defendants to death. In behalf of Foster and Mrs. Halsey the proposition is made that the sentence is excessive and unauthorized. In this they are correct. The crime of being an accessory before the fact to murder is a separate and distinct crime from that of murder itself. We had no statute at the time of this trial providing specifically for the crime of being an accessory to a felony, but the procedure for its punishment is now provided by chapter 145, Laws 1925. Prior to that time it was a common-law crime and provision was made for its punishment by section 1454, Code 1915, which is a s follows:

"When a criminal is found guilty in the district courts of this state of any felony for which no punishment has been prescribed by law, the said criminal shall be punished by a fine of not less than fifty dollars, or by imprisonment in the penitentiary for not less than three months, or both at the discretion of the court."

It is under this statute that Foster must be punished. The proper procedure in such a case is to remand the cause with directions to set aside the sentence as to Foster, and to resentence him in accordance with the law. Territory v. Herrera, 11 N. M. 129, 66 P. 523; State v. Ybarra, 24 N. M. 413, 174 P. 212; 1 Bishop's New Crim. Proc. § 1373.

Counsel are to be commended for the skill and diligence with which the case was presented in both this and the district court. The record discloses a most sordid state of facts. A hired assassin murdered the

deceased at the instigation of his wife and her par-
amour. This horrible crime was committed in a law-
abiding community, where the good people were stun-
ned by its enormity. By the diligence and ability of
the district attorney and the law officers, the defend-
ants were speedily brought to justice and convicted.
They had an able defense by learned counsel, but the
facts were so damning that they could not escape.
It seems almost incredible that such things can come
to pass.

It follows that the judgment and sentence as to
Archer should be affirmed, and, as to Foster and
Halsey, should be reversed, and the cause remanded
to the district court, with directions to set aside the
sentence as to Foster, and to resentence him in ac-
cordance with the law, and, as to Halsey, to award
her a new trial, and it is so ordered.

BICKLEY and WATSON, JJ., concur.

On Motion for Rehearing.

PARKER, C. J. [16] A motion for rehearing has
been filed by the state, based upon the proposition
that there is error in paragraph 4 of our opinion. The
argument is that communications between an informer
and the public prosecutor are privileged, and, as such,
are not a proper subject for cross-examination, and
the refusal of the court to allow cross-examination
was therefore not erroneous, even if a wrong reason
was assigned therefor. There is considerable confu-
sion in the discussion of this proposition in the books.
There are two principles involved. One is that, where
the subject inquired about a state secret, the interests
of the public are involved, and, in such a case, the
communication is exempt from inquiry and disclos-
ure on the ground of public policy. The exemption in
such a case is not based upon the confidential rela-
tion between attorney and client, but upon the right
of the state to protect its secrets for the purpose of
effectively serving the interests of all the citizens.
In such a case the exemption is absolute. The other

principle, often involved, is the right of the citizen who has informed the public prosecutor of the commission of a crime to be secure from exposure when he is afterwards sued for libel, slander, or malicious prosecution. In such a case, he is directly concerned in maintaining the exemption, being a party to the proceeding, and he may rely upon the confidential character of the communication made by him to the prosecuting officer. This is the true privileged communication between prosecuting attorney and a citizen; the latter having the right to rely upon the advice of the former. This doctrine encourages the citizen to inform the prosecuting officer of criminal offenses, which otherwise might go unpunished.

Though not always made clear, that the general doctrine is that communications by an informer to the prosecuting officer are generally privileged. In an action for slander or malicious prosecution against an informant based upon the communications, they are generally, if not always, so considered. 5 Jones on Ev. (2d Ed.) §§ 2168, 2203; Vogel v. Gruaz, 110 U. S. 311, 4 S. Ct. 12, 28 L. Ed. 158; Worthington v. Scribner, 109 Mass. 487, 12 Am. Rep. 736; In re Quarles &Butler, 158 U. S. 532, 15 S. Ct. 959, 39 L. Ed. 1080; State v. Wilcox, 90 Kan. 80, 132 P. 982, 9 A. L. R. 1091, and note 1112; Michael v. Matson, 81 Kan. 363, 105 P. 537, L. R. A. 1915D, 1; Centoamore v. State, 105 Neb. 452, 181 N. W. 182; Attorney General v. Tufts, 239 Mass. 458, 131 N. E. 573, 132 N. E. 322, 17 A. L. R. 274; Lindsey v. People, 66 Colo. 343, 181 P. 531, 16 A. L. R. 1250, and note See, also, 5 Wigmore on Ev. (2d Ed.) § 2374.

The case at bar, however, is not a case of a civil action for libel or slander. This is a case where a witness on the stand for the prosecution was sought to be probed as to his credibility by examining him as to whether in his account to the district attorney he had included the important statements testified to by him at the trial. The witness claimed no exemption for himself; the objection was made by the dis-

trict attorney.  No claim was made that any state secret was involved, nor that the interest of the state could in any way be impaired.  Under such circumstances, there would seem to be no reason for the exemption, either for the protection of the witness or to guard the interests of the state.  The broad statements in some of the cases to the effect that such communications can in no case be disclosed without the consent of the government are to be taken into consideration with the facts before the court.  They were all, or nearly all, cases where the defendant was being sued for slander or malicious prosecution.  There is one case, though, which seems to go further and to announce the doctrine that such communications are absolutely privileged.  Arnstein v. United States, 54 App. D. C. 199, 296 F. 946.  In that case defendants were on trial in the District of Columbia for bringing into the District stolen stock in violation of a local statute.  They caused a subpoena duces tecum to be served on the district attorney of the county and state of New York to produce written statements made to him by one Gluck, a witness for the government.  The district attorney appeared with the statements, but claimed they were privileged, because made to him in his official capacity in the course of an investigation by him in a matter which was pending and undisposed of in the New York courts involving some of the defendants then before the court. The exemption was sustained on the broad ground that such communications may not be inquired into without the consent of the state.  No reliance, in terms, is attached to the fact that this was a state secret; the criminal charges being pending and undisposed of, which alone would have justified the holding. But the court seems to have interpreted the cases of the United States Supreme Court to establish the privileged character of the communications in all cases regardless of the circumstances. This is probably too broad a view.  When it is necessary to protect the interests of the state, or when it is necessary to protect a citizen from an action of libel, slander, or mal-

icious prosecution based on his communication to the prosecuting officer, which he should always feel free to make, then the communication is privileged. When no such circumstances are present, there is no reason for the privilege and it should not prevail. There are some well-reasoned cases to this effect. In People v. Davis, 52 Mich. 569, 18 N. W. 362, the defendant was on trial for adultry with the wife of one O'Rourke. The defendant called the district attorney who was acting when the prosecution was begun and asked him whether, in a statement made to him by O'Rourke, the latter did not say that on the occasion when he now testifies he saw the defendant and his wife flagrante delicto he had seen nothing wrong between the parties. Objection on the ground that the communication was privileged was made and sustained by the court. In the discussion of the matter, the court, speaking through Cooley, Chief Justice said:

"If, then, there is any privilege in the case, it must be the privilege of the state in whose interest O'Rourke assumed to act when making his communication to the prosecuting officer. And we are not called upon in this case to consider whether there may not be cases in which the prosecuting attorney would be excused, in the interest of the state, from disclosing what had been told to him with a view to the commencement of criminal proceedings. There would be strong reasons in many cases why the counsel of the state should be inviolably kept; and nothing we shall say in this case will be intended to lay down a rule except for the very case at bar and others standing upon the same facts.

"In this case the prosecutor testified that on a particular day and at a place specified he witnessed the commission of the crime charged. The defense then offered to show that in laying the case before the prosecuting officer the prosecutor stated that on the day and at the place specified he witnessed nothing wrong between the parties. If he did so state at that time when he was laying before the public authorities the very case they were to prosecute, and if he now swears to a case altogether different, it may well be argued that he is unworthy of belief; and the state has no interest in interposing any obstacles to the disclosure of the facts, unless it is interested in convicting accused parties, on the testimony of unworthy persons. But surely the state has no such interest; its interest is that accused parties shall be acquitted, unless upon the facts they are seen to be guilty; and if there shall be in the possession of any of its officers information that can legitimately

tend to overthrow the case made for the prosecution, or
to show that it is unworthy of credence, the defense should
be given the benefit of it. There was therefore no privilege
to preclude the giving of the testimony for which the de-
fense called.''

A well-considered case is Riggins v. State, 125 Md.
165, 93 A. 437, Ann. Cas. 1916E, 1117. Attached to
the report is a valuable note at page 1121. The de-
fendant in that case was convicted of sexual inter-
course with a girl between the ages of 14 and 16 years.
A question was asked her on cross-examination as
follows: ''Didn't you tell the state's attorney that you
never had intercourse with Walter Riggins?'' Ob-
jection was interposed and sustained by the court.
The Supreme Court of Maryland held that this was
error and makes a lengthy analysis of many of the
cases. See, also, Marks v. Beyfus, 25 Q. B. Div.
(Eng.), 494-498, wher it is said that, when it is made
to appear to the court that a disclosure might show
the prisoner's innocence, the general rule of privileged
communications must yield.

In this connection it is to be noted that we are not
considering a question as to whether a district attor-
ney may be put on the stand to contradict a witness
for the state who has made communications to him
in furtherance of the prosecution. Such a procedure
would seem to present such administrative difficulties
frequently, as to impair the effectiveness of the pro-
secution and to involve the administration of the
criminal laws in great confusion. What we are deter-
mining is whether a witness for the state is subject
to cross-examination for the purpose of probing his
conscience and testing his memory and reliability by
questions as to what he communicated to the district
attorney in regard to the facts in the case, and we
hold that it can be done.

It is to be regretted that such an objection should
have been interposed and sustained. The matter was
trivial, and should not cause a reversal of the judg-
ment. But when a legal right has been invaded, we
have no reason to ignore it in case we cannot say

the error was harmless.

It follows from the foregoing that our former opinion is to be adhered to, and it is so ordered.

BICKLEY and WATSON JJ., concur.