[No. D014253. Fourth Dist., Div. One. June 21, 1991.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
ELIZABETH ANNE BRODERICK, Real Party in Interest.

COUNSEL

Edwin L. Miller, Jr., District Attorney, Thomas F. McArdle and Craig E. Fisher, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Jack M. Earley for Real Party in Interest.

OPINION

HUFFMAN, J.—The People seek a writ of mandate or prohibition after the court quashed subpoenas duces tecum seeking records from various mental

health professionals (doctors)[1] who had treated or tested Elizabeth Anne Broderick (Betty).[2] The court quashed the People's subpoenas on the grounds they violated Betty's state constitutional privilege against self-incrimination. We issued the order to show cause. Because we conclude the self-incrimination privilege does not extend to the documents sought, we grant the petition. However, because we conclude the court should have more closely examined whether specific material from each doctor was protected under Betty's psychotherapist-patient privilege, we remand the matter to the superior court for further hearing.

BACKGROUND

Betty is charged with two counts of murder in connection with the shooting deaths of her former husband, Daniel Broderick (Daniel), and his new wife, Linda Broderick (Linda). Betty's first trial ended in a mistrial when the jury was unable to reach unanimous verdicts. A second jury trial is scheduled for August 1991.

Before Daniel's and Linda's deaths, Betty and Daniel had been involved in an acrimonious dissolution and dispute over custody of their children. In the domestic proceedings various doctors testified about Betty's mental status. In their testimony the doctors referred to and relied upon input of additional doctors.

During the first criminal trial the defense admitted Betty had shot the victims but presented expert witnesses who testified as to Betty's mental state at the time of and before the killings. The defense argued Betty's responsibility for the killings should be mitigated or excused. Some of the defense experts testified that in arriving at their opinions they relied on the work of other doctors who had examined or treated Betty in the past.

After the mistrial, the People caused subpoenas duces tecum to issue to the mental health doctors upon whom Betty's expert witnesses in the first criminal trial had relied. The subpoenas directed the doctors to deliver to the clerk of the court all "psychological/psychiatric" records contained in their files for Betty from the date of first contact through November 1990.

The People filed points and authorities in support of the subpoenas arguing the psychotherapist-patient privilege had been waived and the

---

[1] The subpoenas were directed to both psychiatrists and psychologists. The subpoenaed individuals will be referred to generically as "doctors."

[2] Because more than one person referred to in this opinion is named Broderick, we refer to individuals by their given names.

attorney-client and work product were inapplicable. The defense moved to quash subpoenas duces tecum on the grounds the service of the doctors was untimely under Code of Civil Procedure[3] section 1987, subdivision (c), and defense counsel had not been served with copies of the subpoenas pursuant to sections 1985.3 and 1987.5.

The court at oral argument did not see the issues raised by the parties as being crucial. Rather the court felt the "crux of the issue" was whether requiring the doctors to turn over their records would impermissibly lighten the prosecution's burden as prohibited by *In re Misener* (1985) 38 Cal.3d 543 [213 Cal.Rptr. 569, 698 P.2d 637]. The court assumed arguendo that Betty had waived the psychotherapist-patient privilege and quashed the subpoenas on the basis of the right against self-incrimination under *In re Misener*. The court indicated it would reconsider the matter if the People filed additional points and authorities.

The People filed supplemental points and authorities arguing the discovery of incriminating information from third parties does not violate a defendant's state or federal right against self-incrimination. The defense filed opposition arguing that Betty had not waived the psychotherapist-patient privilege and that compelled production of Betty's psychological records would constitute a violation of her Fifth Amendment protections.

At a second hearing, the court ruled the psychotherapist-patient privilege had been waived because the doctors subject to the subpoenas had either testified in the dissolution proceedings or first criminal trial or, if they had not testified, their reports, test results, and clinical evaluations had been used by those experts who did testify. In finding waiver for those who had not testified, the court found crucial the fact Betty had an opportunity to object to their information being turned over to the testifying experts but rather than doing so she had actually provided the information for use in testimony. The court found a general waiver and did not deal with each doctor individually or hold in camera hearings to review the documents sought. The court reconfirmed its previous ruling that *In re Misener* prohibited disclosure of the information as it would tend to lighten the prosecution's burden and at the same time violate Betty's rights against self-incrimination.

## DISCUSSION

### I

We first address Betty's contention the court's action is not reviewable by this court by writ of mandate. "If the prosecution has not been

---

[3]All statutory references are to the Code of Civil Procedure unless otherwise specified.

granted by statute a right to appeal, review of any alleged error may be sought by a petition for writ of mandate *only* when a trial court has acted in excess of its jurisdiction and the need for such review outweighs the risk of harassment of the accused." (*People* v. *Superior Court* (*Stanley*) (1979) 24 Cal.3d 622, 625-626 [156 Cal.Rptr. 626, 596 P.2d 691], fn. omitted, italics in original.) ■ "[M]andate will not issue to compel an inferior tribunal to exercise its discretion in a particular manner. However, mandate is appropriate when, under the circumstances, the lower tribunal was authorized to exercise its discretion in only one way." (*People* v. *Municipal Court* (*Bonner*) (1980) 104 Cal.App.3d 685, 694 [163 Cal.Rptr. 822].)

■ Since *Stanley*, courts have generally taken a broad view of "jurisdiction" as it relates to a petition for writ of mandate by the prosecution. (See *People* v. *Superior Court* (*Himmelsbach*) (1986) 186 Cal.App.3d 524, 531-532 [230 Cal.Rptr. 890] and cases cited therein.) "Orders denying an accused discovery to which he is entitled are considered in excess of jurisdiction and reviewable by writ. [Citations omitted.]" (*People* v. *Municipal Court* (*Bonner*), *supra*, 104 Cal.App.3d at p. 695.) The *Bonner* court concluded the People should be accorded a similar right to pretrial review when no support for the discovery order can be found in the record. (*Ibid.*) Here, the court determined the right against self-incrimination applied to quash the subpoenas when, as discussed below, there was no basis in the law for such a determination. The first prong of the *Stanley* test is met and the People are entitled to writ review as long as the need for review outweighs the risk of harassment to Betty.

If review is not accorded, the People may be deprived of discovery to which they are entitled. The denial of discovery would result in trial delays and increased cost if ultimately the People obtain the information sought at the time of trial. Allowing pretrial discovery will allow both parties to fully prepare for retrial. Conversely, the risk of harassment appears minimal. Retrial is not scheduled until August. Writ review of the order to quash could not result in retrial or double jeopardy problems. We conclude writ review is appropriate.

## II

In determining whether the material sought was discoverable, the trial court considered the crucial issue to be whether discovery was precluded by Betty's right against self-incrimination. ■ As explained below, we do not consider the self-incrimination privilege to be applicable under the facts of this case and instead view the crucial issue to be whether Betty has waived the psychotherapist-patient privilege as to each of the doctors.

Under Evidence Code section 1010 et seq. a patient has a privilege to refuse to disclose, or to prevent another from disclosing, a confidential communication between the patient and a psychotherapist. The patient waives the privilege if, without coercion, he or she discloses or consents to another disclosing a significant part of the confidential communication. (Evid. Code, § 912.) This court has held the patient waives the privilege when he calls the psychotherapist as a witness in an unrelated trial and elicits information disclosing a significant part of the communications. (See *People* v. *Garaux* (1973) 34 Cal.App.3d 611 [110 Cal.Rptr. 119].) It is therefore clear that Betty may have waived the privilege with respect to some or all of the doctors in question. We are concerned, however, that the court, believing the self-incrimination privilege to apply, did not adequately address the psychotherapist-patient waiver.[4]

In considering the psychotherapist-patient privilege the court at the second hearing made a general finding Betty had waived her privilege based on the doctors either having testified in earlier court proceedings or, if they did not testify, other doctors who did testify relying on their reports, test results, and clinical evaluations. The court did not make any inquiry whether the privilege had been waived as to specific doctors or as to all of the material sought from that doctor. While it may be that the privilege has been waived as to many if not all of the doctors and as to much if not all of the material, we consider the procedure followed by the court to be inadequate.

The subpoenas in question were extremely broad, requesting all psychological/psychiatric records from the doctors' first contacts with Betty through November 1990. The waivers claimed by the People occurred with respect to different doctors over a two-year period. Even assuming Betty may have waived the privilege with respect to communications made before the waiver, it does not necessarily follow she waived the privilege with respect to any communications that may have been made after the waiver. Also depending upon the extent of the revelations, particularly with respect to nontestifying doctors, the disclosure may not have been significant enough to result in a waiver. (See e.g., *Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 340-341 [107 Cal.Rptr. 309, 508 P.2d 309] [psychotherapist-patient privilege]; *Southern Cal. Gas Co.* v. *Public Utilities Com.* (1990) 50 Cal.3d 31, 46-49 [265 Cal.Rptr. 801, 784 P.2d 1373] [attorney-client privilege]; Cf. *Heda* v. *Superior Court* (1990) 225 Cal.App.3d 525, 530 [275 Cal.Rptr. 136] [extent of revelation with respect to waiver of privacy

---

[4]Betty's counsel at oral argument argued the court's decision as to waiver was incorrect both procedurally and on the merits. Having won the war by the court having found the privilege against self-incrimination to apply, however, he did not continue the battle with respect to the psychotherapist-patient privilege.

rights].) We conclude that the procedure followed by the court was insufficient to determine whether the People had met their burden of establishing Betty waived her privilege with respect to specific doctors and the extensive documents sought from each of them.

## III

We turn now to the court's determination the subpoenas should be quashed based on Betty's right against self-incrimination. The Fifth Amendment to the United States Constitution and article I, section 15, of the California Constitution provide that no person in a criminal case shall be compelled to be a witness against himself or herself. The People argue prosecution discovery of incriminating information from third parties does not violate a defendant's state or federal privilege against self-incrimination since such discovery does not involve any compelled defense disclosures. We agree.

The United States Supreme Court has long held the federal self-incrimination privilege does not prevent the production of incriminating documents in the hands of third parties. (*Johnson* v. *United States* (1913) 228 U.S. 457, 458 [57 L.Ed. 919, 920, 33 S.Ct. 572].) Later, in *Couch* v. *United States* (1973) 409 U.S. 322 [34 L.Ed.2d 548, 93 S.Ct. 611] the court held a taxpayer's Fifth Amendment right against compulsory self-incrimination was not violated by the taxpayer's accountant being required to produce the taxpayer's business and tax records possessed by the accountant.[5] (*Id.* at p. 329.) The court found the ingredient of personal compulsion missing as the taxpayer was compelled to do nothing. (*Ibid.*)

In *Fisher* v. *United States* (1976) 425 U.S. 391 [48 L.Ed.2d 39, 96 S.Ct. 1569] the Internal Revenue Service (IRS) interviewed taxpayers during a tax investigation. The taxpayers obtained from their accountants work papers the accountants had generated in preparing the taxpayers' returns and turned them over to their attorneys. The IRS served summonses on the attorneys for the work papers. (*Id.* at p. 394 [48 L.Ed.2d at p. 46].) The Supreme Court again held the documents were not protected by the taxpayers' Fifth Amendment rights because requiring the attorneys to turn the documents over did not involve compulsion as to the taxpayers. (*Id.* at p. 397 [48 L.Ed.2d at p. 47].)

The Ninth Circuit has held the Fifth Amendment does not prevent a doctor or a hospital from being required to produce psychiatric records of a target of

---

[5]The Internal Revenue Service issued a summons for the production of the records to the accountant who turned the records over to the taxpayer's attorney. The court held the parties' rights and obligations were fixed at the time of service. (*Couch, supra*, 409 U.S. at pp. 323, 329, fn. 9. [34 L.Ed.2d at pp. 545-555])

a grand jury investigation in response to a subpoena. (*In re Grand Jury Proceedings* (9th Cir. 1989) 867 F.2d 562.) After first determining no federal psychotherapist-patient privilege existed, the court found the records to be voluntarily kept business records and beyond the scope of the Fifth Amendment privilege. (*Id.* at pp. 564-565.) The court concluded that "[w]here statements are given freely and voluntarily without any compelling influences, the fifth amendment privilege does not apply." (*Id.* at p. 565.)

California case law with respect to the right against self-incrimination has developed along different lines. *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320, 322, 327 [85 Cal.Rptr. 129, 466 P.2d 673] held that a discovery order directing the defense attorney to give the prosecution the names, addresses, and expected testimony of anticipated defense witnesses violated the defendant's right against self-incrimination because it could require the defendant "to disclose information which might serve as a link in a chain of evidence tending to establish [the defendant's] guilt of a criminal offense."

*Prudhomme*'s interpretation of the Fifth Amendment was substantially undermined by *Williams* v. *Florida* (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893] (upholding a notice-of-alibi rule) and *United States* v. *Nobles* (1975) 422 U.S. 225 [45 L.Ed.2d 141, 95 S.Ct. 2160] (holding the Fifth Amendment privilege, being personal to the defendant, did not protect the defense from turning over a defense investigator's report on his discussions with a defense witness). However, in *Allen* v. *Superior Court* (1976) 18 Cal.3d 520 [134 Cal.Rptr. 774, 557 P.2d 65] the California Supreme Court reaffirmed its *Prudhomme* holding on state constitutional grounds stating *Prudhomme* "plainly proscribes compelled defense disclosures which 'conceivably might lighten the prosecution's burden of proving its case in chief.' [Citation.]" (*Allen* v. *Superior Court*, *supra*, 18 Cal.3d at p. 525, italics omitted.)

The Legislature thereafter enacted former Penal Code section 1102.5 which allowed the prosecution to obtain from the defense prior statements of a witness, other than the defendant, once the witness had testified on direct examination. The Supreme Court found the provision unconstitutional in *In re Misener*, *supra*, 38 Cal.3d 543 stating the section ran afoul of the state self-incrimination privilege "requiring the prosecution to carry the entire burden of proving the defendant's guilt" by "compelling the defendant to supply the prosecution with evidence that can impeach his defense witnesses and thereby tend to incriminate him." (*Id.* at p. 545.)

"By requiring the defendant to hand over evidence that will impeach his witnesses, [Penal Code] section 1102.5 undeniably lightens the prosecution's burden.

"*. . . . . . . . . . . . . . . . . . . . . . . . . . .*

"The privilege forbids compelled disclosures from the defendant that will aid the prosecution." (38 Cal.3d at pp. 556, 558.)

We note the continued validity of the *Prudhomme* line of cases is an issue presently before the Supreme Court in *Izazaga* v. *Superior Court* (S017642).[6] As explained below, however, we need not reach the question of the continued validity of the *Prudhomme* case since they are inapplicable to the issues raised here.

## IV

*In re Misener* does not require the trial court to quash the subpoenas based on Betty's state right against self-incrimination. No California case holds the defendant's right against self-incrimination prevents the prosecution from obtaining information from a *third party* to prove its case. Article I, section 15, does not prevent all prosecutorial discovery. Rather, it prohibits a person from being *compelled* to *bear witness against himself or herself.*

The major difference between federal and state law interpreting the respective right against self-incrimination is found in the state affording greater protection against compelled discovery from the defense team. The *Prudhomme* line of cases only prevents the prosecution from obtaining incriminating information from the *defendant* or the *defense team.* Unless the subpoenas compel the defendant or the defense team to turn over information to the prosecution, the cases are inapplicable. Records in the possession of third parties containing evidence generated by interviews which took place before the killings may be incriminating, but their production is not the product of any compulsion upon the defendant or the defense team.

The fact Betty may have originally provided information to the subpoenaed doctors does not implicate her self-incrimination rights. The information was provided voluntarily without compulsion from any government agency. The privilege against self-incrimination is inapplicable to "incriminatory statements made to persons unconnected with government." (*In re Terry W.* (1976) 59 Cal.App.3d 745, 748 [130 Cal.Rptr. 913].)

---

[6]The Third Appellate District of this court recently found Proposition 115, the "Crime Victims Justice Reform Act," to have abrogated *Prudhomme* and its progeny in *Meeks* v. *Superior Court* (Cal.App.), review granted August 15, 1991 (S021708); review dismissed October 31, 1991, and cause remanded to Court of Appeal, Third Appellate District. *Meeks* v. *Superior Court* is not cited as precedent but simply to provide a summary of the current state of the law on the issue.

V

Betty points out the cases relied on by the People below concerned business and tax records. (E.g., *Johnson, supra*, 228 U.S. 457; *Couch, supra*, 409 U.S. 322; *Fisher, supra*, 425 U.S. 391.) She takes the position the sensitive nature of communications between patient and psychotherapist and her legitimate expectation of privacy requires the privilege against self-incrimination be construed liberally in her favor and the court's order be upheld. Betty confuses the function of the psychotherapist-patient privilege with that of the right against self-incrimination. This court recognizes the sensitive nature of the material at issue here. The Legislature recognized the need for confidentiality in this area by enacting a psychotherapist-patient privilege. (Evid. Code, § 1010 et seq.) Once the psychotherapist-patient privilege is waived, however, there is no basis for affording a defendant greater protection with respect to communications to a psychotherapist than any other communications.

Betty also argues that the petition is premature because the People failed to follow the procedures set forth in Proposition 115, the "Crime Victims Justice Reform Act," (Prop. 115, § 23, codified at Pen. Code, § 1054 et seq.) concerning discovery in criminal matters. ■ Proposition 115 discovery procedures apply only to discovery between the People and the defendant. They are simply inapplicable to discovery from third parties.

■ The People claim that all of the subpoenas in issue here were to "third parties with no direct formal or legal relationship to the defendant or the criminal defense team . . . ." However, the fact the subpoenas request information from "date of first contact through November 1990" and the People's separate descriptions of the individuals subpoenaed, indicate the subpoenas may seek information generated postkilling as part of the criminal defense. Upon remand the court should consider whether the information sought from each doctor is truly unconnected with the defense efforts (e.g., psychotherapy before the killings or information generated in the domestic action) or information generated as part of the defense efforts (e.g., tests administered by the defense in preparation for the first criminal trial).

As to any information generated by the defense, the People's entitlement to the documents requested depends upon the extent the information was revealed in the first criminal trial and whether Betty ultimately puts her mental state in issue in the second trial. We presume that if any information

sought was generated as a part of the defense effort the court will assure the proper procedures are followed for discovery.[7]

## DISPOSITION

Let a writ issue directing the court to vacate its order quashing the subpoenas duces tecum. The court is further directed to reconsider its finding Betty generally waived her psychotherapist-patient privilege and determine as to each doctor whether the privilege has been waived and as to what material. Such determination will require in camera review of the material sought. The court is directed to make findings with respect to the discoverability of specific material from each doctor to aid in any further appellate review.

Work, Acting P. J., and Nares, J., concurred.

---

[7] Whether any material sought would be protected by the attorney-client privilege or the work product rule is not before us and is left for the trial court to determine if appropriate.