175 Wis.2d 600 (1993)
499 N.W.2d 719
STATE of Wisconsin, Plaintiff-Appellant,
v.
Shaun A. SHIFFRA, Defendant-Respondent.
No. 92-1986-CR.
Court of Appeals of Wisconsin.
Submitted on briefs January 26, 1993.
Decided March 31, 1993.
*602 On behalf of the plaintiff-appellant, the cause was submitted on the briefs of James E. Doyle, attorney general, and Marguerite M. Moeller, assistant attorney general.
On behalf of the defendant-respondent, the cause was submitted on the brief of Jon G. Mason of Jon G. Mason, S.C. of Kenosha.
Before Nettesheim, P.J., Brown and Anderson, JJ.
BROWN, J.
The state appeals from a pretrial order suppressing the testimony of the victim of an alleged sexual assault. The trial court suppressed the testimony because the victim refused to allow an in camera inspection of her past mental health treatment records. The first issue is whether an in camera inspection is warranted under Pennsylvania v. Ritchie, 480 U.S. 39 (1987). The second issue is whether preclusion of the alleged victim's testimony at trial is the proper sanction for her refusal to submit the records to an in camera review. We affirm.
On July 28, 1991, Shaun A. Shiffra encountered Pamela P. at a bar. After having a drink, the two left the bar to go to Shiffra's apartment. They planned to get a meal gift certificate and then proceed to a restaurant for dinner with another couple. The alleged sexual assault occurred while Pamela was looking at some shirts in Shiffra's bedroom. After the incident, Pamela had bruises on her breasts and left elbow and a "hickey" on her left breast. She reported the incident and made a statement to the police on the same evening.
On August 9, Shiffra was charged with second-degree sexual assault contrary to sec. 940.225(2)(a), Stats. Based on Pamela's testimony at the preliminary hearing, the court bound Shiffra over for trial. He subsequently *603 plead not guilty. One day before trial, defense counsel moved for an adjournment based on evidence recently disclosed by the state. The motion stated in pertinent part, that "the State ha[d] provided the defendant with information which indicate[d] that . . . the complaining witness has a history of psychiatric problems which may affect her ability to perceive and relate truthful information." The trial court granted the adjournment.
The order that is the subject of this appeal arose when defense counsel moved "for an order requiring the plaintiff and complainant, Pamela [P.], to reveal to the defendant her psychiatric history, psychiatric records and to execute an authorization to release medical information from any doctors, hospitals or counselors seen by Pamela [P.] with respect to her mental condition." Shiffra ferried that "he should not be bound by [Pamela's] own self-reporting of the effects of her psychiatric disorders on her ability to perceive and relate truthful testimony."
At the hearing on the motion to compel, defense counsel stated that Shiffra viewed his contact with Pamela to be consensual at the time of the incident. After argument, counsel said that he would not have any objection to an in camera review of the records. He stated:
I do not want anything from this woman's history other than evidence that she may suffer from some type of psychiatric disorder which causes her an inability to truthfully relate facts as she perceives them. . . . And that she may suffer from an inability or some disorder which causes her to have flashbacks to previous instances in her life and then they become sexual assaults of her because of her disorders.
*604 The state opposed the motion on the grounds that the physical evidence corroborated Pamela's story and that her records were absolutely privileged under sec. 905.04, Stats. The state also suggested that defense counsel was on a "fishing expedition" because Shiffra had not yet articulated his theory of defense. Defense counsel responded by acknowledging Pamela's privilege and requesting that the court bar her testimony if she refused to disclose her psychiatric records. He also reiterated the defense theory that the sexual contact was consensual.
After hearing the arguments, the court started, "[T]here has been provided to the Court, I think, an adequate showing to indicate that there may be psychological problems which do affector psychiatric which do affect the individual's ability to accurately perceive what is going on about here [sic]." The court continued:
In think there has been a sufficient basis shownprovided to the Court for the Court to at least believe an in camera inspection be ordered for the Court to determine whether or not there is anything in the . . . psychiatric or psychological reports which would be of materiality to the defendant, Mr. Shiffra.
The hearing was adjourned to give Pamela a chance to decide whether she would waive her sec. 905.04, Stats., privilege.
Pamela decided not to allow the court access to her records for an in camera review. Shiffra then brought a motion to bar Pamela's testimony. In its decision, the court acknowledged that it did not have the power to order the records' release. The court gave Pamela twenty-one days to disclose her records. When she failed *605 to do so, the court issued an order barring Pamela from testifying at trial. The state now appeals.
[1]
We must first decide whether Shiffra is entitled to an in camera review of Pamela's past psychiatric and mental health treatment records. This question implicates Shiffra's constitutional right to due process of law.[1]See Ritchie, 480 U.S. at 56. We review constitutional questions de novo, without deference to the trial court. State v. Littrup, 164 Wis. 2d 120, 126, 473 N.W.2d 164, 166 (Ct. App. 1991).
[2, 3]
Under the due process clause, criminal defendants must be given a meaningful opportunity to present a complete defense. California v. Trombetta, 467 U.S. 479, 485 (1984). A defendant's right to discover exculpatory evidence does not include the authority to search the state's entire file. Ritchie, 480 U.S. at 59. Rather, an in camera review of evidence achieves the proper balance between the defendant's rights and the state's interests in protection of its citizens. See id. at 60-61.
[4, 5]
To be entitled to an in camera inspection, the defendant must make a preliminary showing that the sought-after evidence is material to his or her defense. State v. S.H., 159 Wis. 2d 730, 738, 465 N.W.2d 238, 241 (Ct. App. 1990); In re K.K.C., 1423 Wis. 2d 508, 511, 422 N.W.2d 142, 144 (Ct. App. 1988). We review under the clearly erroneous standard the findings of fact made by the trial court in its materiality determination. See State *606 v. Turner, 136 Wis. 2d 333, 343-44, 401 N.W.2d 827, 832 (1987).
Both Shiffra and the state agree that Ritchie is the proper starting point for our analysis. However, the parties differ in their interpretations of that case. The state distinguishes Ritchie on the following four grounds. First, the state argues that this case "does not fall within the ambit of Ritchie" because Pamela's records are not in the possession of the prosecution or any other state agency. Second, there is no "direct nexus" between the records and the charge against Shiffra because many of the records are temporally remote from the incident at issue here. Third, the records in this case are absolutely protected from disclosure by statute,[2] whereas the Ritchie case involved a statute that allowed disclosure in certain circumstances. Finally, this case involves a pretrial determination of materiality; Ritchie was an appeal following the defendant's trial and conviction. Therefore, the principles enunciated in Ritchie do not apply to this case.
The state's first three arguments are easily disposed of. We are bound by Wisconsin precedent, which clearly makes Ritchie applicable to cases in which the information sought by the defense is protected by statute and is *607 not in the possession of the state. See K.K.C., 143 Wis. 2d at 511, 422 N.W.2d at 144 (information sought was confidential); S.H., 159 Wis. 2d at 736, 465 N.W.2d at 240-41 (information sought was protected under sec. 905.04, Stats., and was in the possession of a private counseling center). According to these cases, Shiffra is entitled to an in camera inspection if he meets the burden of making a preliminary showing of materiality.
The state contends that S.H. and K.K.C. are not binding because their relevant language is dicta. We do not agree. Both cases unequivocally adopted Ritchie as the law in Wisconsin even when the records are not in the state's possession. This precedent also suggests that whether the records are temporally remote is not a condition precedent which must be decided prior to in camera inspectiononly a preliminary showing of materiality is needed. Finally, a statute allowing for confidentiality is not a barrier to in camera review. We are bound by those determinations.
Furthermore, the fact that some of Pamela's records are temporally remote from the incident for which Shiffra was charged does not meaningfully distinguish this case from Ritchie. The temporal element will come into effect when the trial court conducts its in camera inspection; if the records are too remote in time or are inconsistent with her current condition, they will not be relevant or material and should not be turned over to the defense.
We now address the state's argument that the principles enunciated in Ritchie are inapplicable to a pretrial proceeding. We appreciate the state's argument that materiality is difficult to determine before trial because the record is not fully developed. However, the standard of materiality urged by the state is inappropriate in the case of a pretrial motion to compel discovery.
*608 The state's standard would make evidence material only if the information probably would change the outcome of the defendant's trial. This standard is impossible to meet pretrial. If we were to apply this standard, we would be ignoring the language in K.K.C. and S.H., which entitles defendants to in camera inspection of evidence. This we decline to do because we conclude that the "preliminary showing" described in S.H. creates a more realistic burden on the defendant than the one urged by the state.
[6]
We conclude that the defendant's burden should be to make a preliminary showing that the sought-after evidence is relevant and may be helpful to the defense or is necessary to a fair determination of guilt or innocence. In crafting this rule, we analogize to cases in which a defendant seeks disclosure of a government informant's identity. The seminal case on this issue is Roviaro v. United States, 353 U.S. 53 (1957).
In Roviaro, the defendant sold heroin to a government informant. Roviaro was subsequently tried and convicted of knowingly receiving and transporting heroin. Prior to and during trial, the defense sought to learn the identity of the government informant. Those requests were denied. The court of appeals upheld the conviction, but the Supreme Court reversed.
The Supreme Court held that Roviaro had a right to know the identity of the government's informant. The Court reasoned that " [w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege [to withhold the identity of an informant] must give way." Id. at 60-61. The Court also stated, "The problem is one that calls for balancing the public interest *609 in protecting the flow of information against the individual's right to prepare his defense." Id. at 62.
The balancing philosophy from Roviaro is reflected in sec. 905.10, Stats.,[3] which is also grounded in Wisconsin case law precedent. State v. Outlaw, 108 Wis. 2d 112, 121, 124, 321 N.W.2d 145, 151, 152 (1982). The initial burden of showing that the informant may be able to give testimony necessary to a fair trial is minimal; if it is met, further inquiry by the trial court is required. State v. Hargrove, 159 Wis. 2d 69, 75, 464 N.W.2d 14, 17, published as corrected, 469 N.W.2d 181, 184 (Ct. App. 1990).
We recognize that the informant cases differ from the present case because they involve a statute authorizing in camera review. However, this difference is not fatal to our analogy. Section 905.10, Stats., is based on case law precedent that set forth balancing considerations similar to those in this case. Both situations require us to balance the defendant's constitutional right to a fair trial against the state's interest in protecting its citizens by upholding a statutorily created privilege. *610 Both situations also address a pretrial showing that sought-after evidence or testimony is material to the defense.
In this case, Shiffra's preliminary showing of materiality must establish that Pamela's records are relevant and may be necessary to a fair determination of guilt or innocence. The state contends that the evidence Shiffra seeks is merely cumulative of other evidence already available to him. The state points to defense knowledge, from interviewing Pamela, that she has been diagnosed with post-traumatic stress disorder related to suffering repeated sexual assaults by her stepfather. The state also points out defense knowledge that Pamela has been treated for various psychiatric problems since the age of six and that she has been hospitalized several times for undiagnosed psychiatric disorders. The state further observes that Pamela admitted to problems with chemical abuse and told the defense that she takes multiple prescribed medications.
Pamela also told the defense about an incident with her former employer in which she was terminated because she said to her boss, "You're made because I won't fuck you." In addition, the defense was aware of a previous incident in which Pamela had filed sexual assault charges that were later reduced to disorderly conduct. In that case, Pamela's sister refused to testify on assault charges that were later redudced to disorderly conduct. her behalf, in part because the sister felt Pamela was "unable to distinguish between what had occurred and what would be characterized as some dream effect." A search of criminal records also disclosed that Pamela had been charged with endangering safety by conduct regardless of life by firing a revolver through a car window at her former boyfriend. She claimed that she was trying to get his attention by firing the revolver. The state's position is that the trial court acted prematurely in finding a *611 preliminary showing of materiality because the defendant has available to him other sources of information which potentially could yield precisely the same type of information he claims might be contained in Pamela's records.
We disagree with the state. It may well be that the evidence contained in the psychiatric records will yield no information different from that available elsewhere. However, the probability is equally as great that the records contain independently probative information. It is also quite probable that the quality and probative value of the information in the reports may be better than anything that can be gleaned from other sources. Finally, the information might well serve as a confirmation of Pamela's reality problems in sexual matters. It is the duty of the trial court to determine whether the records have any independent probative value after an in camera inspection of the records.
We believe that the state's position shows too little confidence in thereto of the trial court in balancing a person's right to confidentiality of mental health records against the defendant's right to present a defense. That lack of confidence is unfounded. A judge's duties were aptly described nearly two centuries ago in the landmark case of Marbury v. Madison, 1 Cranch. 137 (1803). There, Justice John Marshall stated, "If two laws conflict with each other, the courts must decide on the operation of each.... This is of the very essence of judicial duty." Id. at 177-78.
Judges were bound to balance to balance difficult conflicts at the time of Marbury, and they are bound to do so now. If we ignored the mandate of Ritchie and deny Shiffra's request for in camera inspection, we would be disregarding the best tool for resolving conflicts between the sometimes competing goals of confidential privilege and *612 the right to put on a defense. Public policy and the history of our judicial system require that Wisconsin's courts embrace Ritchie in the manner prescribed by our court in K.K.C. and S.H..
[7]
We conclude that Shiffra has met the burden of making a preliminary showing of materiality. He presented ample evidence during the hearing on his discovery motion that Pamela's psychiatric difficulties might affect both her ability to accurately perceive events and her ability to relate the truth. These difficulties are relevant because they directly affect Pamela's credibility. They also bear directly on Shiffra's defense of consent. Shiffra is entitled to an in camera inspection of the records.
The only issue remaining is whether the trial court misused its discretion when it suppressed Pamela's testimony as a sanction for her refusal to release the records. In this situation, no other sanction would be appropriate. The court did not have the authority to hold Pamela in contempt because she is not obligated to disclose her psychiatric records. An adjournment in this case would be of no benefit because the sought-after evidence would still be unavailable. Under the circumstances, the only method of protecting Shiffra's right to a fair trial was to suppress Pamela's testimony if she refused to disclose her records. We affirm the trial court's order.[4]
*613 By the Court.Order affirmed.
NOTES
[1] Both parties presented arguments in their briefs regarding Shiffra's rights to confrontation and compulsory process. Because we decide this case based on a due process analysis, we do not address the confrontation and compulsory process issues raised by the parties.
[2] The state points to sec. 905.04(2), Stats., which states in relevant part:

GENERAL RULE OF PRIVILEGE. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's . . . mental or emotional condition, among the patient, the patient's physician, . . . the patient's psychologist, the patient's social worker, the patient's marriage and family therapist, the patient's professional counselor or persons, including members of the patient's family, who are participating in the diagnosis or treatment under the direction of the physician, psychologist, social worker, marriage and family therapist or professional counselor.
[3] Section 905.10, Stats., states in relevant part:

Identity of informer. (1) RULE OF PRIVILEGE. The federal government of a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer ....
. . . .
(3) EXCEPTIONS.
. . . .
(b) Testimony on merits. If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case ... and ... a state ... invokes the privilege, the judge shall give the ... state ... an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony.
[4] The state suggests that one solution would be to allow Pamela to testify despite her continuing assertion of her confidentiality privilege, but to allow the defendant to tell the jury that she has refused to allow access to her records. We hold that this is no solution at all. The jury will know only that the witness has exercised her privilege not to divulge her personal mental history. A reasonable juror might well consider this decision to be a reasonable exercise of her right to privacy rather than an attempt to hide something material to the credibility of her testimony. While the state terms the allowing of a comment by the defense to be a "sanction against" the complaining witness, it is reasonable to believe that the jury will instead consider the witness' choice with favor. The state's suggestion has no merit.