912 P.2d 297

STATE of New Mexico, Plaintiff–
Appellant,

v.

Seferino GONZALES, Defendant–
Appellee.

No. 15665.

Court of Appeals of New Mexico.

Jan. 17, 1996.

Tom Udall, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, for Plaintiff–Appellant.

Hilary Lamberton, Lamberton & Riedel, Santa Fe, for Defendant–Appellee.

## OPINION

BLACK, Judge.

1. Defendant, Seferino Gonzales, was charged with four counts of criminal sexual penetration of Rachel C. The State appeals the district court's decision to dismiss the charges. The court's order of dismissal states as follows:

> THIS MATTER having come before the Court on December 1, 1993 on the Defendant's Motion to Dismiss, the Court makes the following findings of fact:

1. The Court had previously ordered that the defense could inquire into the alleged victim's use and/or abuse of alcohol and her association and/or involvement with Alcoholics Anonymous for the purpose of impeachment.

2. Based on Defendant's Renewed Motion for Dismissal filed December 1, 1993 the Court ordered that the records of psychologist Kevin Mains who treated the alleged victim for some time after the alleged sexual assault be submitted to the Court for in-camera review.

3. Based on Defendant's Renewed Motion for Dismissal filed December 1, 1993, the Court ordered the medical records of Dr. Robin Tucler [sic] who treated the alleged victim shortly after the alleged sexual assault be submitted to the Court for in-camera review.

4. The prosecuting attorneys advised the alleged victim to not sign any further medical releases and this requested discovery did not see the light of day.

5. The prosecuting attorneys also advised the alleged victim and her mother not to answer any other questions related to the alcohol use/abuse issue. She was instructed to answer only questions pertaining to alcohol use on the date in question.

Based on the foregoing the Court concluded that the Defendant's right to a fair trial and the Defendant's right to confrontation would be violated and for this reason the Court suppressed the testimony of the alleged victim and granted the Defendant's Motion to Dismiss.

We affirm.

## I. FACTS

2. On February 9, 1992, Rachel and several of her friends went to the American Rock Cafe in Albuquerque to see an all-male revue. At the preliminary hearing, Rachel testified that over a period of approximately five hours she drank four beers and two shots of schnapps. She denied any drug use. She also said that she socialized with Defendant, a dancer in the revue, whom she had met several days earlier. Rachel further testified that, at approximately 11:30 p.m.,

Defendant invited her to get something to eat, and she left with him. However, Rachel testified that rather than going to a restaurant, Defendant took her to a house where, over the next four hours, she was forced to submit to anal and vaginal intercourse, cunnilingus, and digital penetration. An acquaintance of Defendant's later drove Rachel home. When she arrived home, she reported to her mother and sister that she had been sexually assaulted, and the police were notified.

3. At the preliminary hearing Defendant testified he had engaged in consensual sex with Rachel. He also testified that, while together, they had both consumed cocaine.

## II. STANDARD OF REVIEW

4. We emphasize at the outset the limited scope of this opinion. We are not deciding the admissibility into evidence of any of the medical or psychotherapy records at issue. Indeed, we are not even confronted with whether Defendant was entitled to receive any of these documents. We consider only whether the district court abused its discretion in requiring the State to make the documents available for in camera review.

5. The district court is in the best position to assess the probative value of challenged evidence as it relates to the facts before the court and to weigh that value against any interest in the confidentiality of records that may be subject to discovery. *State v. Ramos,* 115 N.M. 718, 723, 858 P.2d 94, 99 (Ct.App.), *cert. denied,* 115 N.M. 602, 856 P.2d 250 (1993). "The remedy for violating a discovery order is within the discretion of the trial court." *State v. Montoya,* 116 N.M. 297, 304, 861 P.2d 978, 985 (Ct.App.), *cert. denied,* 116 N.M. 364, 862 P.2d 1223 (1993). We will not disturb the district court's ruling absent an abuse of discretion. *Id.*

## III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ORDERING RACHEL'S MEDICAL AND PSYCHOTHERAPY RECORDS PRODUCED FOR IN CAMERA REVIEW

6. The State argues that the district court abused its discretion when it ordered

the complaining witness to authorize judicial access to her medical and psychotherapy records for in camera review. In making this argument, the State relies on SCRA 1986, 11–504 (Repl.1994) (Rule 504). Rule 504(B) provides:

> **General rule of privilege.** A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of his physical, mental or emotional condition, including drug addiction, among himself, his physician or psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

7. The district court's order of dismissal was based on the State's refusal to release the documents of Dr. Robin Tuchler and psychologist Kevin Mains. Yet, Rachel signed a release giving an Albuquerque police detective the right to obtain the records of one day's treatment by Dr. Tuchler. She also executed a general release allowing the State access to all of Dr. Tuchler's records, although this release was not used because the district attorney's office did not want Dr. Tuchler's records "in its files." Rachel also signed a waiver allowing the State's prosecutors access to the records of Mains. Representatives of the State interviewed Mains, but did not request copies of his records. Rachel's waiver in this case is a major barrier to the invocation of the privilege.

■ 8. The State argues that in the present context this privilege is "absolute." By this the State apparently means the alleged rape victim has an absolute right to allow police and the State's attorneys access to these records but can then invoke an impenetrable barrier against discovery of such records by other parties, or even in camera review by the court. The State supports this rather unique conclusion by reading the privilege contained in Rule 504 in conjunction with Article II, Section 24(A)(1) of the New Mexico Constitution and NMSA 1978, Section 30–9–16(B) (Repl.Pamp.1994). We remain unpersuaded.

9. Article II, Section 24(A)(1) of the New Mexico Constitution was added in 1992 and provides that in specified criminal actions, including criminal sexual penetration, the victim shall have "the right to be treated with fairness and respect for the victim's dignity and privacy throughout the criminal justice process." Our courts have long recognized the need to protect the dignity and, where possible, the privacy of rape victims. *See, e.g., State v. Padilla,* 91 N.M. 800, 802, 581 P.2d 1295, 1297 (Ct.App.1978). However, the prosecutor provides no legal authority to support the contention that this constitutional provision gives the victims of these specified crimes the right to disclose their medical records selectively to the police and prosecutors and then invoke an "absolute" privilege against in camera inspection by the trial court or subsequent disclosure to other parties. The plain meaning of the constitutional language creates no such right and we decline to adopt the State's interpretation of this provision.

■ 10. It is equally clear Section 30–9–16 does not support the State's version of "absolute" privilege. The State apparently relies on subsection A of this statute which reads:

> As a matter of substantive right, in prosecutions pursuant to the provisions of Sections 30–9–11 through 30–9–15 NMSA 1978, evidence of the victim's past sexual conduct, opinion evidence of the victim's past sexual conduct or of reputation for past sexual conduct, shall not be admitted unless, and only to the extent that the court finds that, the evidence is material to the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

11. The State's reliance on this provision in the present context is misguided for several reasons. First, it clearly governs only the admission of evidence at trial and not pretrial discovery. Indeed, the statutory language presupposes the party seeking to introduce evidence of the victim's sexual past already possesses such evidence. Second, the statute places the responsibility for determining the admissibility of such evidence upon the judge who must determine whether the evidence is

material and not unnecessarily inflammatory or improperly prejudicial. That is, of course, exactly what Defendant and the district court proposed in the instant case. Ironically, it is the State which continues to resist any such judicial consideration and balancing. Finally, the above statute by its terms applies only to "the victim's past sexual conduct, [and] opinion evidence of the victim's past sexual conduct or of reputation for past sexual conduct" and thus would have no applicability to the evidence of Rachel's use of alcohol and its consequences or to other medical evidence.

■ 12. All Article II, Section 24 and Section 30–9–16 really provide in this context is a reminder that victims as well as defendants have valuable legal and constitutional rights which must be fully considered and fairly balanced by the trial judge. The scope of any privilege applicable to the present facts and possible mechanisms for its waiver must therefore derive from Rule 504 itself. *See Sanchez v. Wohl Shoe,* 108 N.M. 276, 280, 771 P.2d 984, 988 (Ct.App.) (there is no physician-patient privilege except as provided in Rule 504), *cert. dismissed,* 108 N.M. 217, 770 P.2d 539 (1989).

■ 13. All of the privileges contained in Article V of the New Mexico Rules of Evidence are limited by the provisions of SCRA 1986, 11–501 (Repl.1994) (Rule 501). Rule 501 establishes the basic principle that all witnesses must testify and produce evidence, "[e]xcept as otherwise required by constitution, and except as provided in these rules or in other rules adopted by the supreme court." *Id.; see Salazare v. St. Vincent Hosp.,* 96 N.M. 409, 412, 631 P.2d 315, 318 (Ct.App.), *aff'd in relevant part and rev'd in part,* 95 N.M. 147, 619 P.2d 823 (1980); Murl A. Larkin, *New Mexico Rules of Evidence* § 501–1 (revised ed. 1989). This precept is consistent with the bedrock principle that "[t]he basic purpose of a trial is the determination of truth." *Tehan v. United States ex rel. Shott,* 382 U.S. 406, 416, 86 S.Ct. 459, 465, 15 L.Ed.2d 453 (1966). This principle of truth-seeking is consistent with the long standing New Mexico rule that a criminal defendant is entitled to cross-examine the State's prosecuting witness as to what information he or she communicated to the district attorney. *State v. Archer,* 32 N.M. 319, 337, 255 P. 396, 403 (1927).

■ 14. The various privileges in Article 5 of the New Mexico Rules of Evidence establish specific exceptions to the basic principle, but they do not obliterate the underlying concept of Rule 501 or validate barricades designed merely for the strategic use of litigants. "A privilege does not mean that certain matters may be 'disclosed to some and withheld from others' at the sole discretion of the holder, but rather that a confidence will receive legal protection so long as the holder of the privilege keeps the confidence himself." 2 David W. Louisell & Christopher B. Mueller, *Federal Evidence* § 248, at 1124–25 (1985) (quoting *In re Natta* 48 F.R.D. 319, 322 (D.Del.1969)); *see also,* Michael H. Graham, *Handbook of Federal Evidence* § 511.1, at 372 (3d ed. 1991) ("Once confidentiality is destroyed through voluntary disclosure, it cannot be restored by a subsequent claim of privilege.").

■ 15. Rule 504 establishes a basic privilege for medical and psychotherapy records. The privilege applies, however, only as long as the communication is confidential. Nothing in the Rule's language suggests it is inviolable as the State argues. Rather, it is generally recognized that when a litigant voluntarily agrees to disclose medical or psychotherapy records, which otherwise would be protected by a privilege, a waiver occurs. *People v. Superior Court (Broderick),* 231 Cal.App.3d 584, 282 Cal.Rptr. 418, 421 (1991). Therefore, when a medical patient voluntarily signs a release allowing the disclosure of information which would otherwise be privileged, the privilege must be considered waived. Of course, the confidentiality of a communication is preserved when disclosure is made as part of another confidential relationship and within the ambit of the other privileges recognized under our rules of evidence. *See, e.g.,* SCRA 1986, 11–503 (Supp. 1995) (lawyer-client privilege); SCRA 1986, 11–505 (Repl.1994) (husband-wife privilege); SCRA 1986, 11–506 (Repl.1994) (communications to clergy). However, this is of no aid to the State's position because there is no gen-

426

eral prosecutor-victim privilege. *See Archer,* 32 N.M. at 336, 255 P. at 403.

■ 16. We must conclude that Rachel's medical releases in favor of the detective and the State terminated the confidentiality of the records and thereby constituted a waiver of her right to rely on the physician-psychotherapist privilege of Rule 504. This privilege, thus, presented no legal barrier to the district court's order that such records be produced for in camera review.

## IV. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DISMISSING THE CASE

■ 17. Normally the determination of whether Rachel's waiver encompassed a particular medical record would require the district court to examine the individual records in camera. *See Broderick,* 282 Cal.Rptr. at 422; *see also* D.E. Evins, Annotation, *Waiver of Privilege as Regards One Physician as a Waiver as to Other Physicians,* 5 A.L.R.3d 1244 (1966). In the present case, however, the district attorney's office adamantly refused to turn over the medical records of Dr. Tuchler and Kevin Mains and instructed Rachel not to execute any medical releases or facilitate court access to these records.

18. The district attorney made it clear it was his intention to "defy" the order of the district court. After a lengthy hearing where the State fully enunciated its position, the following exchange took place between the prosecutor and the district court:

THE COURT: Let's go to the mental health records. I believe I will just rule that if records exist, they should be provided to the Court for in-camera inspection.

MR. SUTTLE: And we respectfully refuse to allow her to turn those over.

THE COURT: Then the Court will rule she will not be allowed to testify.

MR. SUTTLE: You're suppressing her testimony?

THE COURT: Yes. Any other matters?

\* \* \* \* \* \*

MR. SUTTLE: On that very point, may I make a suggestion to the Court, if I

might? Rather than suppressing her testimony—or you have just suppressed her testimony. Let me assure you we have no case without it.

THE COURT: So I will grant the Motion to Dismiss.

19. Thus, the prosecutor elected not to seek interlocutory review, pursuant to NMSA 1978, Section 39-3-3(B) (Repl. Pamp.1991), of the district court's decision to suppress Rachel's testimony. Of course, if we had affirmed on interlocutory appeal, the State could have reevaluated whether to permit in camera inspection of Rachel's medical records.

■ 20. In addition to the physician-psychotherapist privilege, the State argues these medical and mental health records and testimony regarding Rachel's history of problems with alcohol were not relevant. At the time of the district court's decision, the State sought to rely on mental anguish as a basis for proving personal injury under NMSA 1978, Section 30-9-11(D)(2) (Cum.Supp. 1993). There was, thus, a legitimate issue as to the relevance of the mental health and medical records. The proper procedure to determine relevance is that which was requested by Defendant and ordered by the district court: in camera review. *State v. Pohl,* 89 N.M. 523, 525, 554 P.2d 984, 986 (Ct.App.1976).

■ 21. We caution, however, that in camera review should not be granted based solely on a defendant's request. There must be a threshold showing by defendant that the records may reasonably be expected to provide information material to the defense. *Pennsylvania v. Ritchie,* 480 U.S. 39, 58 n. 15, 107 S.Ct. 989, 1002 n. 15, 94 L.Ed.2d 40 (1987). A general assertion that inspection of the records is needed for a possible attack on the victim's credibility is insufficient to meet this threshold showing. *See People v. Foggy,* 149 Ill.App.3d 599, 102 Ill.Dec. 925, 500 N.E.2d 1026, 1031 (1986), *aff'd,* 121 Ill.2d 337, 118 Ill.Dec. 18, 521 N.E.2d 86, *cert. denied,* 486 U.S. 1047, 108 S.Ct. 2044, 100 L.Ed.2d 628 (1988). Records previously turned over to the Court showed that Rachel had a history of blackouts from alcohol. Giv-

en that information and the particulars of the alleged offense, we cannot say it was an abuse of discretion for the district court to require disclosure of the records sought to determine whether they contained information that Rachel may have suffered cognitive difficulties which would affect her credibility at trial. *Cf. Pohl*, 89 N.M. at 525, 554 P.2d at 986 ("In the absence of a determination of what the files would have shown we cannot hold there was no prejudice.").

22. The Wisconsin Court of Appeals recently upheld the same sanction on similar facts in *State v. Shiffra*, 175 Wis.2d 600, 499 N.W.2d 719 (Ct.App.1993). In *Shiffra*, the defendant encountered the complaining witness, Pamela P., at a bar. *Id.*, 499 N.W.2d at 720. After having a drink, the two went to the defendant's apartment where, she alleged, he sexually assaulted her. *Id.* The defendant claimed that the sexual contact was consensual. *Id.* Shortly before trial, the state revealed that the complaining witness had a history of psychiatric problems. *Id.* The defendant then sought an order requiring Pamela " 'to reveal to the defendant her psychiatric history, psychiatric records and to execute an authorization to release medical information from any doctors, hospitals or counselors seen by Pamela [P.] with respect to her mental condition.' " *Id.* (alteration in original).

23. As in the present case, the state in *Shiffra* maintained that such records were absolutely privileged and that the defendant was just on a " 'fishing expedition.' " *Id.*, 499 N.W.2d at 721. The trial court found that defendant had made an adequate showing that Pamela's psychiatric condition might affect her ability to accurately perceive events and ordered the records to be produced for in camera judicial review. *Id.* When Pamela refused to waive her privilege, the district court issued an order barring her from testifying. *Id.*

24. The Wisconsin Court of Appeals recognized that suppressing testimony from a complaining witness who refuses to obey appropriate discovery orders is an appropriate sanction:

The only issue remaining is whether the trial court misused its discretion when it suppressed Pamela's testimony as a sanction for her refusal to release the records. In this situation, no other sanction would be appropriate. The court did not have the authority to hold Pamela in contempt because she is not obligated to disclose her psychiatric records. An adjournment in this case would be of no benefit because the sought-after evidence would still be unavailable. Under the circumstances, the only method of protecting Shiffra's right to a fair trial was to suppress Pamela's testimony if she refused to disclose her records.

*Id.*, 499 N.W.2d at 724–25. Because there was no waiver in *Shiffra*, we think this logic applies to the present even stronger fact pattern and we find no abuse of discretion in the district court's decision to prohibit Rachel from testifying as long as she refused to produce the disputed records for in camera review.

25. The district court granted Defendant's motion to dismiss only after the assistant district attorney said, "you have just suppressed her testimony. Let me assure you we have no case without it." Based on the prosecutor's repeated refusal to allow production of Rachel's medical and psychotherapy records and the above representation, dismissal of the charges against Defendant was appropriate. *See Mathis v. State*, 112 N.M. 744, 747, 819 P.2d 1302, 1305 (1991) (State's refusal to produce records concerning a critical witness justified dismissal of the charges).

The order of dismissal is affirmed.

**IT IS SO ORDERED.**

HARTZ and BUSTAMANTE, JJ., concur.